Local 441 is a local trade union whose primary purpose is the representation of employees of Phelps Dodge Copper Products Corporation in collective bargaining. United Electrical, Radio and Machine Workers of America, International Union (hereinafter called UE) became an affiliate of the Congress of Industrial Organizations (hereinafter called CIO) on November 16, 1938, pursuant to the issuance of a certificate of affiliation by the CIO. Local 441 was chartered on December 10, 1940, by the UE-CIO while UE was an affiliate of CIO.
In its organizing campaign preceding the formation of Local 441, UE-CIO sought support by virtue of its affiliation with CIO, advertising that affiliation and its ability to protect *Page 532 
and advance the interests of the Phelps Dodge employees by drawing on the moneys, personnel, experience and prestige of CIO.
Prior to the time that UE-CIO attempted to become the bargaining agent for the employees of the company, the employees were represented by an independent union known as Bayway Copper Products Employees Association. One of the arguments urged in support of organizing a local of UE-CIO was the advantage to be gained by affiliation with an international union affiliated with the CIO as contrasted to affiliation with an independent union.
Pursuant to an election conducted by the National Labor Relations Board on March 6, 1941, United Electrical, Radio and Machine Workers of America affiliated with the Congress of Industrial Organizations was certified by said Board as the exclusive bargaining representative of the employees of the company. The designation that appeared on the ballot in said election read "United Electrical, Radio and Machine Workers of America, CIO." A copy of the original Notice of Election with sample ballot was received in evidence.
Membership application cards were distributed to the employees of the company prior to the aforesaid election. The union in which the employees accepted membership, according to the designation that appeared on said card was "United Electrical, Radio and Machine Workers of America affiliated with the Congress of Industrial Organizations." Appeals for membership in the union then seeking to represent the employees were based upon its affiliation with CIO, and membership application cards distributed read "CIO cards."
The constitution of UE-CIO received in evidence on the inside cover designates the union as "United Electrical, Radio and Machine Workers of America (UE) affiliated with the Congress of Industrial Organizations." The flag of the local union received in evidence bears the letters "CIO." All the stationery, insignia and other printed matter refer to Local 441 as being affiliated with UE-CIO.
On or about November 2, 1949, CIO expelled UE-CIO on grounds of defiance by UE of CIO policy in organizational *Page 533 
economic and political matters. At the same time CIO chartered a new international union known as International Union of Electrical, Radio and Machine Workers, CIO (hereinafter called IUE-CIO). IUE-CIO is now the only national organization affiliated with CIO, with CIO jurisdiction to represent employees in the electrical, radio and machine industries.
Immediately prior to the expulsion of UE from CIO, the possibility of such expulsion was the subject of discussion among the members of Local 441 and concern with respect to the future of the local in the event of such expulsion was expressed. Meetings of Local 441 were held in three shifts on November 3 and 4, 1949, after the expulsion of UE-CIO, for the purpose of considering the position of the local with respect thereto. These meetings were called pursuant to notice. At these meetings the membership, by a vote of approximately 800 to 30, voted in favor of disaffiliating itself from UE and in favor of affiliating with IUE-CIO. Local 441 thereupon applied to IUE-CIO for a charter which it received and now holds as Local 441 IUE-CIO. All of the former officers of Local 441 UE-CIO signed the application for a charter to IUE-CIO, including the plaintiff Duris.
A special meeting of the Executive Board was called after the membership voted to disaffiliate itself from UE and to affiliate with IUE-CIO, and the funds of Local 441 were transferred to a bank account bearing the designation "Local 441 IUE-CIO." Plaintiff Duris is one of the three officers authorized to draw upon the new account in the same manner as he had been authorized to draw upon the prior bank account.
On November 9, 1949, Phelps Dodge Copper Products Corporation, upon being informed of the above facts, executed an agreement with Local 441 IUE-CIO, stating that its existing collective bargaining agreement "continues to be applicable to Local Union No. 441 now affiliated with International Union of Electrical, Radio and Machine Workers, CIO."
Plaintiffs who in essence represent the interests of the United Electrical, Radio and Machine Workers of America, seek injunction preventing Local 441 from spending any of *Page 534 
its funds, from receiving from Phelps Dodge any union dues checked off by Phelps Dodge from the wages of its employees under the aforesaid agreements, and restraining defendants from taking any steps "in pursuance of their plan to have UE Local 441 secede from the UE" and from using the name Local 441 either alone or in a combination with any other name, and from using its offices at 105 Bayway Avenue, Elizabeth, New Jersey, or preventing or attempting to prevent the use of that office by UE.
Defendants maintain that no part of the relief sought is proper and that therefore injunction should not issue.
The defendants contend that the contract between Local 441 and UE is to be found in the body of the writings consisting of the CIO constitution, the certificate of affiliation granted by CIO to UE-CIO, the International constitution, the charter issued by UE-CIO to Local 441, and the constitution of the Local, and that these are to be construed in the light of the circumstances attending upon the affiliation of the Local with UE-CIO, with due regard to the objects and purposes of such affiliation. When so construed, defendants contend that the principal and fundamental question is whether in view of the situation which has arisen by reason of the expulsion of UE from the CIO resulting in the loss of its affiliation with the latter, the contract between UE and Local 441 terminated and rendered void Article 18, Section O of the UE constitution which provides that "disbandment, dissolution, secession or disaffiliation of any local shall be invalid and null and void if seven or more members indicate their desire to retain the local charter."
Defendants in support of such contention cite Clark v.Fitzgerald, N.Y. Super. Ct. Spec. Term, Part III, reported in the New York Law Journal on December 6, 1949. That was likewise a suit for injunction in which the UE issued charters to locals including Local 450 UE and in which the facts and circumstances were identical with the instant case. Justice Eder in that case held:
"* * * Under the circumstances, in such a situation as is here extant, it is my view that it must be held that with the expulsion of *Page 535 
United Electrical from C.I.O. the contract between United Electrical and Local 450 terminated, and that article 18, Section O, of the constitution of United Electrical was rendered nugatory and eliminated. To hold, in the circumstances, that article 18, Section O, nonetheless continues operative, and that the Local is bound to continue membership in the U.E., even though the basic objective and inducing cause for joining with U.E., viz.,
U.E.'s affiliation with C.I.O., has been rendered impossible of continuance by U.E.'s expulsion, is to give to this provision an unreasonable, unwarranted and unjustified construction.
"When the basic objective was destroyed by U.E.'s expulsion from the C.I.O., continuance by Local 450 of membership in U.E. was a meaningless and valueless connection, and under the particular facts of this case Local 450 and its members were relieved of any further obligation to continue membership in U.E.
"With the elimination of article 18, section O, of the U.E. constitution no impediment remained which prevented Local 450 affiliating with the C.I.O. or any other organization. * * *"
With this holding by Justice Eder I agree.
In this age of wide dissemination by press and radio of information touching public matters, everyone is informed of the growth and development of the major labor organizations as representatives of labor in its quest for improvement in wages, security and conditions of service. Originally and for many years the American Federation of Labor (AFL) was the central and recognized body and authority for representing the labor classes in their economic contract and relation with capital and management. With the advent of the Congress of Industrial Organizations (CIO) there ensued and there has ever since persisted a stern competitive struggle between the two organizations for supremacy in the field of labor-union representation. As is generally true where there is free competition in any field of human endeavor, the contest between these labor Titans to win adherents produces advantages and wholesome results for the masses, here the laboring classes. Each central organization strives to achieve better and greater results for its constituents and with understandable pride publicizes its accomplishments. The laboring man hears, considers and weighs these contending claims for recognition. His decision to join a particular union is generally the result of careful deliberation, influenced principally by *Page 536 
his own appraisal of the conflicting claims of the central organizations and his own estimate of their relative merits. This is at the root of his choice. When membership is sought by a labor union on the basis of an existing affiliation between itself and either of these two central organizations, that basis becomes and endures as a continuing condition of the membership it attracts. This condition need not be explicitly expressed; it is implicit in the circumstances under which members are sought and their association induced. To hold that members, so invited and enrolled, cannot emancipate themselves when the basic and inducing affiliation is destroyed, is not alone to do violence to a fundamental and controlling condition of membership but to impose a form of serfdom degrading to the individual and harmful to the public. Such evil result must be avoided and there is nothing in the law of contracts that bars the way. Where the continued existence of a state of facts (here an affiliation) is an implied condition going to the essence of the contract, the destruction of that state of facts puts an end to the contract itself. The obligation is no stronger or more enduring than the foundation upon which it rests and will not survive the latter's collapse.
Moreover, in the instant case, as in International Union,etc., C.I.O. v. Becherer, 142 N.J. Eq. 561; affirmed,4 N.J. Super. 456, the question is raised whether Local Union 441 had the right, by the will of its membership, to withdraw from its affiliation with UE, and if it had, what was the effect upon its funds and property? The constitution and by-laws of UE the parent organization provide that its revenue shall be derived by the payment of monthly per capita tax on each member of the Local. Dues by the workmen are not paid directly to the International but are paid to the local union which in turn remits out of these dues a per capita tax to the parent body. The existence of Local 441, its revenue and its functions, are not derived from or dependent upon the parent body so that the local union could well continue its existence and function without any relationship with UE. The local union is a separate and distinct voluntary association *Page 537 
which owes its creation and continued existence to the will of its own members. We held in International Union, etc., C.I.O. v.Becherer, supra,
"* * * The property accumulated by the local union from contributions made by the individual members is a trust fund for the benefit of those members, and though the legal title to such property may be vested in the officers of the local, such ownership is of a trust character for the use of the individual members. The affiliation with the international union undoubtedly creates the liability resting on the local union to pay, while such affiliation endures, the dues or per capita tax called for in the international charter, but that gives the international union nothing more than a claim or an account receivable. No direct property right in the local union's assets can or does arise in favor of the international. The relationship between the international and its constituent local unions is that the local unions are the constituent units in a confederation comprising the international. That confederation is a voluntary one and any local union is free to withdraw from the alliance. It cannot be rationally claimed that a combination of local unions constitutes a single indivisible and indestructible union from which no constituent may secede or be expelled. * * * When such severance or dissolution occurs, the local union withdrawing or expelled, as the case may be, continues its own separate voluntary existence, freed only of an affiliation which never was more than transient. * * * Nor should this court concern itself with the motives of the members of a local union desiring and accomplishing a change in affiliation. The legal right to make such change being unquestioned, the underlying motives are of no importance in this investigation. These views are in accord with the opinion of this court in Schweitzer v. Schneider,86 N.J. Eq. 88; affirmed (Court of Errors and Appeals), in Id. 256."
Preliminary injunction is denied. Present order. *Page 538