### GENERAL ELECTRIC CO. v. EMSPAK et al.

Civ. 54—240.

United States District Court
S. D. New York.
July 17, 1950.

Donovan, Leisure, Newton, Lumbard & Irvine, New York City (J. Edward Lumbard, Jr., and John Morhous, New York City, of counsel), for plaintiff.

Isadore Katz, New York City (Bertram Diamond, and David Jaffe, New York City, of counsel), for James B. Carey and others.

Arthur Kinoy, New York City, for Julius Emspak and others.

KNOX, Chief Judge.

On December 15, 1949, the General Electric Company filed a complaint in this Court against the above named defendants wherein it sought a judgment of interpleader and an injunction that would protect the complainant from a multiplicity of suits.

Defendants are various individuals who represent the United Electrical Radio & Machine Workers of America (U. E.); the International Union of Electrical, Radio and Machine Workers—C. I. O. (I. U. E.); various General Electric local unions; and certain employees of complainant who had signed and filed with it, check-off authorization cards, pursuant to an agreement made between complainant and U. E., under date of June 11, 1948.

The disputes which are responsible for this litigation had their origin in the action taken by the C. I. O. on or about November 2, 1949, whereby it withdrew its charter of affiliation from U. E., and conferred the same on I. U. E. In the course of bringing about an adjustment which would conform to the necessities of this change in union affiliation, conflicting claims between local unions came into existence. These had to do with the successorship rights under the outstanding contract between General Electric and U. E., with respect to the property of local unions, and particularly, to certain union membership dues that had been checked off by complainant pursuant to individual authorization of some of its employees.

On May 19, 1950, Court approval was given to two stipulations that had been signed by attorneys who purported to represent all persons and parties to this suit. These stipulations were designed to bring the litigation to a conclusion. The first of these is to the effect that the funds in question be paid into the Registry of this Court; that the plaintiff be discharged from liability in connection therewith; that defendants be enjoined from instituting or maintaining suits against complainant, and that claimants to the fund resolve their differences under the jurisdiction of this Court.

The second stipulation requires that the fund shall be retained in the Registry until union elections shall have been held under the supervision of the National Labor Relations Board, and which will be determinative of the identity of the collective bargaining agents of the employees of the General Electric Company who are here

concerned. Thereafter, the Clerk of this Court shall pay, in connection with each bargaining unit with respect to which dues were checked off, the sums so collected, less a proportionate amount of the expense incident to this proceeding, to the respective bargaining agents of I. U. E. or U. E., their locals or affiliates, which may be certified as such by the National Labor Relations Board. If none such be certified, the monies are to be returned to the employees from whose wages the check-off dues were deducted.

In accordance with the provision of Rule 23(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., notice was given all General Electric employees whose union check-off dues are involved, and opportunity was afforded them to voice their views with respect to the proposed settlement.

As of June 30, 1950, General Electric had paid into the Court's Registry the sum of $422,711.80. This amount, according to the complaint, is composed of the contributions of some 75,000 of the company's employees.

Roughly, six hundred employees have joined in letters or petitions to the Court in which objection is expressed to the proposed settlement. The most substantial opposition came from men who find that, as a result of the National Labor Board elections, and which were held between the dates of the aforesaid stipulations and the time of the hearing on objections thereto, they are represented by a U. E. or an I. U. E. local that is without their support and confidence. These employees ask that their dues, instead of being disposed of under the stipulations, be returned to them or otherwise distributed according to their directions. This attitude is easily understandable, particularly in cases where the union elections were hotly contested. It is natural, in such instances, that a minority group of workers would prefer that accumulated dues be returned to themselves, rather than have them go into the treasury of the union they had not favored.

The issues so raised involve the personal rights of these individuals and the right of the defendant unions, by their ac-

tions, to bind each person whose name appears upon the roster of a particular union group.

There is some authority for the unions' contention that they alone are the only proper claimants to the monies here involved. In Fay v. American Machine & Foundry Co., Sup.Ct., 101 N.Y.S.2d 902, a stipulation, under circumstances, closely akin to those existing here, was approved notwithstanding that the employer, who had interpleaded the unions argued that the fund should be paid to the individual employees. However, the Court called attention to the fact that, in that case, there were no objections by employees themselves. It then went on to say that in the light of the undisputed and stipulated facts, which are not specifically detailed in the opinion, there was no merit in the contention that neither union was entitled.

It must be remembered that the Taft-Hartley Act enunciates a policy of solicitude for the rights of employees with respect to the check-off. 61 Stat. 157 (1947), 29 U.S.C.A. § 186(c). That statute requires that the employees execute an individual authorization, and, if irrevocable, the duration of such authorization may not exceed one year.

Where an irrevocable authorization exists, there is scant authority on the question as to whether an employee can revoke the assignment in the event of an expulsion of his union from the International.

In Durkin v. John Hancock Life Ins. Co., D.C.S.D.N.Y., 92 F.Supp. 893, Judge Clancy expressed the view that the employees would at least have a colorable claim to the deductions. But, he did not decide the question.

In some of the opinions which have considered disputes stemming from the disaffiliation of the U. E. with the C. I. O., the Courts have indicated that the interests of the employees, rather than that of the contending unions, should govern. Huntsman v. McGovern, Ohio Com.Pl., 1949, 91 N.E.2d 717; Duris v. Iozzi, 6 N.J.Super. 530, 70 A.2d 793. In the latter case, the freedom of action of the individual employee, in relation to his union associa-

tion, was affirmed in these terms: "When membership is sought by a labor union on the basis of an existing affiliation between itself and either of these two central organizations, that basis becomes and endures as a continuing condition of the membership it attracts. This condition need not be explicitly expressed; it is implicit in the circumstances under which members are sought and their association induced. To hold that members, so invited and enrolled, cannot emancipate themselves when the basic and inducing affiliation is destroyed, is not alone to do violence to a fundamental and controlling condition of membership but to impose a form of serfdom degrading to the individual and harmful to the public. Such evil result must be avoided and there is nothing in the law of contracts that bars the way." 70 A.2d at page 796.

Here, however, there is a controlling distinction which makes it unnecessary to pass upon the implications of the above authorities. The check-off authorizations, which were executed by the General Electric employees, reserved to such employees the right to revoke the assignment upon 30 days' notice. Thus, there is no question here of the employees being held to a contractual commitment after supervening events render adherance to the obligation undesirable. Employees were always free, if discontented with the extent of union representation they were receiving, or for any other reason, to terminate the dues deductions.

If employees did not exercise their right to revoke, it must be presumed that they were content with union control of the funds, and accordingly, the agreement between the two unions which could properly claim the fund, would operate to bind them. The employees had a ready means of releasing themselves from the check-off obligation. In order to preserve their rights, it is unnecessary that another procedure be adopted.

The employees who have expressed opposition to the stipulations make no statement that any of them ever revoked his check-off authorization prior to submitting their objections thereto. There is no in-

dication that, at any time during the period from November, 1949, when the disaffiliation took place, through May, 1950, when the stipulations were filed, they had availed themselves of their opportunity to terminate the check-off and reclaim so much of the dues as would otherwise have been collectible after their revocation was effective. It is therefore unnecessary for me to decide whether an employee, who had revoked his authorization prior to the settlement, would be entitled to receive not only his dues subsequent to the effective date of his revocation, but also such amounts as were deducted prior to that date, perhaps as far back as to the time of the disaffiliation. Without meaning to pass upon this question, if it be assumed that under circumstances such as here, an irrevocable authorization may be revoked, then it may well be that an employee would not be held to the contractual obligation of these check-off cards to give thirty days' notice of revocation.

It is my judgment that the objections to the settlement are without merit. It may be said, also, that the solution embodied in the stipulations is an enlightened approach to what may well have been a lengthy and tedious dispute. It permits of a disposition which accords with the expressions of a majority of the individuals involved. If the objections were allowed, it might be necessary completely to upset the stipulations. Otherwise, an undue advantage would be accorded that union whose loyal followers, now a minority in their bargaining unit, did not feel called upon to remain faithful to the stipulations made on their behalf. Democratic processes do not purport to attain full satisfaction for both a majority and minority at issue, and here, since the rights of individuals have not been transgressed, it is perfectly proper that the objectants be required to abide the event.

An application of a different kind is also before me at this time. Therein, a local union of the International Federation of Technical Engineers, Architects and Draftsmen's Union, A. F. L., seeks intervention for the reason that it has been designated, in the recent N. L. R. B. elections, bargaining representative of a par-

ticular General Electric plant unit. Pursuant to the stipulations heretofore discussed, check-off funds of such unit are returnable to the employees from whose wages the monies were deducted. The local union wishes either to act as disbursing agent of these sums, or be permitted to furnish the names of the appropriate payees to the Court to secure a proper accounting of the fund. However, inasmuch as the parties to the stipulations have already agreed to aid in the disposition of the amounts in the Court Registry, intervention of the petitioner for this purpose is unnecessary.

The General Electric Company, which undoubtedly is in the best position to expedite the matter, stands ready to undertake the task of refunding dues to such employees as are, pursuant to the settlement, entitled to receive the same. The U. E. and I. U. E. have expressed their willingness to inform the Clerk of the Court as to the identities of such bargaining representatives as may be certified by the National Labor Relations Board. These certifications will be determinative as to whether payments initially are made by the Clerk to the company, or to one of the two unions. Actually, only the U. E., I. U. E., the individual employees, and the General Electric Company, to the extent of the expenses herein allowed, have an interest in the monies. It may be, however, that other unions, and the company, are in a position to assist the U. E. and I. U. E. in presenting accurate certifications to the Court.

No objection has been made to the proposed order of interpleader or to the costs that are to be allowed the General Electric Company. Approval of the order was withheld until opportunity was afforded me to consider all the issues presented by this litigation. It now being evident that complainant is fully entitled to the relief it asks, I shall forthwith approve the orders based upon the aforementioned stipulations.

In rechecking the protests of complainant's employees to the settlement stipulations, I find that one of them, Hugh C. Baillie, of 49 Pearl Avenue, Revere (51) Massachusetts, revoked his check-off authorization about three months prior to May 27, 1950, the date of his communication to me. Since the date of such revocation, I assume that he has received his full wages without deduction for union dues. But such revocation, in my opinion, is insufficient to entitle him to a return of check-off dues that were deducted from his wages prior to the date of his revocation.