526

**BOZEMAN, Plaintiff-Appellant, v. FITZMAURICE et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21874.   Decided June 13, 1951.

Davis, Davis & Handelman, Cleveland, for plaintiff-appellant.

Warren M. Briggs, for defendant-appellees.

(PHILLIPS, PJ, GRIFFITH, J, of the 7th District, METCALF, J, of the 4th District, sitting by designation.)

## OPINION

By THE COURT:

This is an action sounding in contract. The contract was entered into on December 1, 1936, between Local 707, United Electrical Radio and Machine Workers of America (hereinafter referred to as Local 707 U. E.) and International Union of Electrical Radio and Machine Workers of America C. I. O. (hereinafter referred to as U. E.). The Local is a voluntary unincorporated group of employees of the General Electric plants in Cleveland. The U. E. is an International voluntary unincorporated labor organization having as its members various locals throughout the country with headquarters in New York City. The C. I. O. is the Congress of Industrial Organization, a federation of essential autonomous unions. Local 707 received and accepted a charter from U. E., on December 1, 1936. The charter provides:

"It is hereby agreed in the acceptance of this charter that the aforesaid Union shall conform to the constitution, rules and regulations of the U. E."

The U. E. Constitution provides:

"Any disbandment, dissolution, secession or disaffiliation of any Local shall be invalid and null and void, if seven or more members indicate their desire to retain the local charter."

"The affiliated local Unions shall adopt their own constitution and by-laws provided that these do not conflict with the constitution and by-laws of U. E."

When this charter was accepted by the Local, a contractual obligation was created whereby the Local was governed and controlled by (a) its own constitution, (b) the charter it has received from U. E., (c) the constitution of U. E., and (d) the by-laws, rules and regulations of each. These instruments constituted the contract between Local 707 and U. E.

At the time Local 707 accepted this charter, U. E. was an affiliate of C. I. O. and the C. I. O. is specifically named in the Local's constitution. This relationship continued for over twelve years during which time the Local's membership increased tremendously. It accumulated assets in excess

of $24,000.00 and it and U. E. advertised U. E.'s affiliation with C. I. O. and used the power of C. I. O. to gain contractual rights and benefits from industry for its members.

On October 30, 1949, a regularly called membership meeting of Local 707 was held at East Junior High School. Having received a telegram from Julius Enspak, general secretary and treasurer of U. E. urging financial assistance for steel workers and mine workers on strike then, the Local voted a donation of $500.00 from the Local's funds. On Nov. 2, 1949, for reasons relating to its conduct U. E. was expelled from C. I. O. On Nov. 3, 1949 a special executive board meeting of Local 707 was held, and defendant Fitzmaurice made the following motion:

"In view of the action of the C. I. O. in expelling the U. E. from the Congress of Industrial Organization, the executive officers of Local 707 have removed the local funds from the bank. The funds are now in safekeeping. This action has been taken in the best interests of the members of Local 707."

The minutes of this meeting disclose "after heated and lengthy discussion, the motion carried by roll call 15 to 13." The evidence discloses that the officers of Local 707 forwarded some $24,000.00 of funds from the Local's treasury at or about this time or, at most, within a few days thereafter. On Nov. 27, 1949, a regularly called meeting of the entire membership of Local 707 was held and the minutes of that meeting disclosed that the members (1) ratified and confirmed the actions of the officers with respect to the Union's funds; (2) disaffiliated from U. E.; (3) affiliated with I. U. E. At and before the time of the opening of this meeting the funds in question belonged to the Local. The officers some three or four weeks before had given these funds to the steel workers on strike. The local at this meeting approved and confirmed this action on the part of its officers and such approval is clearly binding on the Local. The Local owned these assets and could dispose of them as it saw fit. This is not a case of diversion of the funds of the Local.

At this meeting on November 27, the majority of the members affiliated with I. U. E., a C. I. O. affiliate, and this group is known as Local 707, I. U. E., C. I. O. The minority members retain their membership in Local 707 U. E. and are operating and functioning as such under the December 1, 1936 charter.

Why did not the members of Local 707 on November 27 have a right to dispose of all of their own assets? The Local is an autonomous group. Its existence, its revenues and its

functions are not derived from or dependent upon the parent body. The Local could still function without any relationship with U. E. In fact U. E. depends upon the per capita tax of the Local's members for its financial existence. The Local is a separate association which owes its creation and continued existence to the will of its members. This Local had exclusive control over its funds. It had no right to divorce itself from U. E. with whom it was bound by contract, except for a good and valid reason. The Local says it has two good reasons why the contract should not be enforced; (1) the affiliation of the U. E. with the C. I. O. is an implied condition in the contract between U. E. and Local 707 and the U. E.'s disaffiliation from the C. I. O. puts an end to this contract and excuses Local 707 from further performance; (2) to enforce the contract would be contrary to public policy.

Exhibits of letter-heads, membership applications, contracts, badges, withdrawal cards, authorizations to deduct membership fees, reports, membership books, the sign on the local's office window, coupled with the testimony of Loretta Toner, David J. Fitzmaurice, Herman Pierce and James Sayers, and further reinforced by the constitutional provision of Local 707, Article II which refers to C. I. O. three distinct times, serve as an adequate basis for holding that there was an implied contract by U. E. to remain affiliated with C. I. O.; that the affiliation of U. E. with C. I. O. was a decisive factor in the desire of the local's membership to affiliate with U. E.; that the desire of a large majority of the members of Local 707 for affiliation with C. I. O. was frustrated by U. E's expulsion from C. I. O.; that C. I. O. was a major inducement to employees in joining Local 707 and on account of this affiliation the local's membership increased enormously until it reached a membership of approximately 3000 in 1949 and that continued affiliation of U. E. and C. I. O. was a material implied condition of the contract. We believe that reasonable minds could come to no other conclusion.

The importance of this affiliation is further borne out by the fact that during the years 1936 to 1949, U. E. was the bargaining agent of all twenty-three units of the General Electric Company, but since it was expelled from C. I. O. it now bargains as the functioning agent for only five unions while the eighteen other bargaining unions are represented by I. U. E. This, in and of itself, is strong evidence of the importance of the C. I. O. affiliation in the minds of the members of the local. After this implied condition in the contract was destroyed the contract was broken and this

put an end to the contract so far as the local's obligations are concerned. This excuses the Local from further obligations, and performance. The obligation is not stronger or more enduring than the foundation upon which it rests. Local 707 after expulsion of U. E. had a right to disaffiliate from U. E. and the Local may retain its assets and take them with it to a new affiliation.

In the instant case, the Local disaffiliated with U. E. and then affiliated with I. U. E., both of which acts it clearly had a right to do. The vote at the meeting of the Local's members on November 27, unmistakably establishes this fact.

The fact that more than seven members voted against disaffiliation does by such act retain the charter for that minority, but does not bind the Local against disaffiliation nor a new affiliation. Local 707 had a right to emancipate itself from U. E. when U. E. was no longer affiliated with C. I. O. U..E. was expelled from C. I. O. because of its malevolent acts of communism. This is not a case where members of a labor organization seceded from its Union. The entire Local acted and as a Local disaffiliated from U. E. Members of Local 707 were not members of U. E. They remained members of the Local. The property of the Local did not become the property of U. E. The Local's only obligation to U. E. is the payment of a per capita tax assessed against and paid by the Local and not by its members.

At the C. I. O. Convention in Cleveland on Nov. 2, 1949, serious charges of subversive activities were made by C. I. O. against U. E., and to this date, so far as this record is concerned, the U. E. has failed to purge itself of these charges. It has done nothing to regain its place in the C. I. O. or to convince the C. I. O. or the American public that the charges levelled at it by C. I. O. on the floor of the Convention have no foundation in fact and are therefore baseless. True, the U. E. adopted a resolution in September, 1949:—

"again raiding and dictatorship in the C. I. O." but this in no wise answered the grave charges under which it now labors.

In conclusion, we find that this suit arises in a contract setting. The contract is between Local 707 and U. E.: that the continued affiliation of U. E. with C. I. O. was an essential provision of the contract and that on the termination of the affiliation, the vital object of the contract is frustrated and the contract fails, and that Local 707 is released from all obligations thereunder; that the transfer of the funds was transacted in a lawful manner, free from fraud and in no wise constituted a diversion of the local's assets and that

Local 707 I. U. E. is the lawful owner of whatever assets Local 707 had at the time of the dissaffiliation from U. E.

Finding the contract unenforcable as against the defendants, it is unnecessary to pass upon the contention that to enforce the contract would be contrary to public policy. The issues in this case have been disposed of on the basis of contract. However, the courts may not shut their eyes nor close their ears to matters that are of general public knowledge. They may take judicial notice of such established facts. The Communist Party is not a legitimate political party. It is now made up of those who are engaged in subversive conduct and are striving for the overthrow of this government by force and violence. The courts may not confiscate assets or property of the communists under our present law. They do now enjoy the protection of property rights in Ohio, no matter how inimical their presence in our midst is to our government and to our public welfare.

Judgment for defendants appellees. Exc. Order see journal.

PHILLIPS, J, GRIFFITH, J, METCALF, J, concur.