Thomas A. Aurelio, J.
The issues being the same, these two equity actions have been tried together by consent. The supplemental complaints are identical except for the parties defendant. Each contains two causes of action, the first by Lester Crawford, in his capacity as special trustee, and the second by Peter H. Olson, individually and in his capacity as acting secretary-treasurer, both being officials of the Bakery & Confectionery Workers’ International Union of America, hereinafter referred to as “ International ” for brevity.
The first cause of action in each complaint alleges plaintiff Crawford, on or about December 17, 1957, was duly designated as special trustee of the two locals, each being a subordinate body, by the general executive board of the International, for the purpose of taking charge of the locals and to take possession of the funds and property of each pursuant to the provisions of the constitution of the International, and further alleges *200 that in violation of the constitution the locals did perform acts purporting to effect a secession from the International and/or dissolution.
The second cause of action alleges plaintiff Peter H. Olson, as secretary-treasurer of the International, on or about December 19, 1957, was authorized to take charge of and turn over to the International all the funds and property of locals pursuant to article XIV, section 8, of the International’s constitution which provides: Should a local union dissolve, secede, or have its charter revoked all its money and property shall revert to the ownership of the International Union, and the International secretary-treasurer may authorize, in writing, a member of a nearby local or a representative to take charge and turn same over to the International Union. ’ ’
The litigation" stems from the disaffiliation of defendants, Locals 50 and 51, from the International after the expulsion of the International as an affiliate of AFL-CIO following public disclosures of corruption and unethical practices of the International’s principal officers made by the McClellan Committee (U. S. Senate) while investigating corrupt labor union activities.
The locals are autonomous and self-sufficient, have their own by-laws, hold their own meetings, elect their own officers, collect dues from members, conduct their own business affairs, and pay a per capita tax to the International, and, pursuant to International’s constitution, article XIV, section 8, All funds and property of the local union shall be held by it in the name of the local union to be used only for the purpose of effectuating the objectives of this Constitution and in accordance with its provisions.”
Numerous questions are presented for the court to determine, two of which, as I see it, will be dispositive of this litigation. (1) Did the Locals 50 and 51 validly disaffiliate from International? and (2) If so, did all the money and property of the locals upon such disaffiliation revert to the ownership of International pursuant to the above-quoted article XIV, section 8, of the constitution of International.
Upon the record before me I find and decide disaffiliation was effectively and validly made. Plaintiffs’ claim pursuant to article XIV, section 22 of the constitution of the International, which provides No local can dissolve while seven members remain in good standing and desire to retain the charter ” has not been established. With respect to Local 50, no evidence was adduced to establish that seven members desired to retain the International charter. The fact is no member was called to give such testimony. With respect to Local 51, plaintiff *201 called seven members to testify that they wished to retain the International charter, two of whom, however, admitted that they attended the special membership meeting on December 21, 1957, but did not vote in opposition to the resolutions of disaffiliation from the International and affiliation with the new International which were adopted, being content to remain silent although they could have stood up and be counted for or against the resolutions while the other five did not attend the meeting. It is too late for them to be heard after the resolutions were adopted and acted upon and obligations thereunder incurred. I am satisfied that both locals gave timely and adequate notice to the membership, either by postal card or circular, or by notice posted in the shops or places where they worked, in accordance with the usual practice for the giving of notice of meetings. No member of either local was called to testify that they did not have notice of the meeting. Both the postal cards and the notices stated the meeting was being called to vote on the question of disaffiliation of the local from the International and on the question of affiliation with the new union chartered by the AFL-CIO, known as the American Bakery and Confectionery Workers International Union, AFL-CIO.
Upon disaffiliation, both locals immediately became affiliated with American Bakery and Confectionery Workers’ International Union, AFL-CIO, newly chartered by AFL-CIO to replace the expelled International, and continued to function with the same officers and in the same manner as before. The importance of being affiliated with an International affiliate of AFL-CIO becomes apparent when considered in the light of what president Cross of plaintiff: International himself had to say on this subject. Speaking of the AFL-CIO merger, among other thing's, he said: “A united labor movement will be a dynamic force at work for you and for all Americans. In time, it can bo expected to foster progress in behalf of your standard of living at a far faster rate than would have been possible with labor divided.” Again, he said: This, (referring to AFL-CIO) of course, is the parent body of all American labor. It speaks with authority at the highest levels for sixteen million workers who are members of affiliate national and international unions. The AFL-CIO conducts intensive research, legislative and economic projects which are of a general nature and are beneficial to all wage earners.” In the same article he further said: “ For the work they (referring to AFL-CIO) have accomplished it brings this lifetime dream to the threshold of fulfilment. The AFL-CIO leadership deserves the wholehearted gratitude and praise of every American worker.”
*202 Moreover, that affiliation of the International with AFL-CIO was highly prized becomes apparent when, at the convention of the International held after it was ousted, there was adopted a resolution that the International seek to reaffiliate with the AFL-CIO.
Further advantages are derived from being affiliated with an International affiliate of AFL-CIO because of the right to affiliate with State and local bodies of AFL-CIO, such as New York City Central Trades and Labor Council, State Federation of Labor and Westchester Federation of Labor, all of which provide essential and continuous assistance to the local labor unions in the territory by unity of action, mutual assistance and emergency aid.
It is unconscionable to hold that, because a written contract does not expressly so provide, a contracting party may not, without breaching the contract, disaffiliate from a corrupt and dishonest association. This is especially so when there is at stake the welfare of thousands of members of a union, together with the public confidence so essential to maintain peaceful and friendly relations with businessmen, big and small.
It cannot be gainsaid that in negotiating new contracts a labor union will run into untold obstacles if businessmen have to deal, directly or indirectly, with labor leaders whose only interest is to feather their own nests rather than looking out for the future welfare of its members.
A violation of the trust so reposed in labor leaders is in and of itself sufficient justification for a local union to call it quits. This is precisely what motivated the two local unions to disaffiliate from the International, and the record amply justifies their action. Had the locals disaffiliated for caprice or some internecine dispute, it would have been another story.
The reasons and motivations underlying the disaffiliation of defendant locals parallel the causes for the ouster of the International from AFL-CIO. Considering that the International was booted out of the AFL-CIO on charges of unethical practices by corrupt elements in control of its affairs, and considering the decided effect the ouster could have on the prestige of the locals, its membership, and on the public as well, it cannot be said that defendants ’ contention that plaintiffs came into court with “ unclean hands ” is without merit.
I do not agree with defendants’ contention that neither plaintiff has capacity to sue. I am satisfied that there was at least substantial compliance with the pertinent constitutional provisions governing the giving of notice in such cases.
*203 With respect to the numbers “50” and “51” by which the locals are identified, suffice it to say this was the number each local became known by as an affiliate of the International and under which each carried on its activities since 1935 and 1939, respectively, when they Avere chartered. I perceive no good reason for depriving these locals of the continued use of these numbers as part of their name.
Upon the entire record and exhibits before me, I conclude plaintiffs have failed to establish their right to relief prayed for in the complaint. Accordingly, both complaints are dismissed on the merits and judgment rendered in favor of defendants, Avith costs.
The foregoing constitutes the decision required by section 440 of the Civil Practice Act.
Settle judgment.