GLADNEY, Judge.
This action to determine the ownership of a checking account in the First National Bank of Shreveport, listed in the name of “Bakers’ Local Union 369”, was instituted January 9, 19S8, by A. L. Roberts, Special Trustee of Local 369, Bakery and Confectionery Workers’ International Union of America, against J. H. Ferguson and the First National Bank of Shreveport. Before trial of the case, Local 369 of the Bakery and Confectionery Workers’ International Union of America and Local 369, American Bakery and Confectionery Workers’ International Union AFL-CIO became the real parties in interest, superseding Roberts and Ferguson, whose appearances had been representative. The aforesaid locals are sometimes hereinafter referred to as Local 369 BCW, and Local 369 ABC, and their international or national affiliates as BCW and ABC.
The funds so involved were deposited by respondent bank in the registry of court in the manner prescribed by LSA-R.S. 13 :- 4811 et seq., and, following trial, were awarded by judgment to Local 369 BCW. From the decree so rendered, Local 369 ABC has appealed.
This litigation stems from a controversy which arose in 1957 and was occasioned by the expulsion of BCW from the AFL-CIO. J. H. Ferguson, then president of Local 369 BCW supported the taking of certain steps designed to disaffiliate the local from its parent organization and to have it affiliate with ABC of AFL-CIO. Prior to the act of expulsion. Ferguson had attended a meeting at Atlanta that forecast action by the AFL-CIO and on November 30, 1957, he called a meeting of Local 369 BCW which approved a resolution condemning President Cross of the BCW. At another meeting convened by Ferguson on December 14, 1957, retention of legal counsel and an audit of the books were directed preparatory to separation from BCW. Led by Roberts, members of Local 369 BCW loyal to BCW immediately took counter measures, and on December 18, 1957, Ferguson and other officers of Local 369 BCW were notified by BCW of their removal and of the appointment of A. L. Roberts as special trustee in charge of the affairs of the local pursuant to Art. 20, Section 4 of the constitution of BCW.[1] The appointment of the special trustee, notwithstanding, Ferguson held a meeting on December 21', 1957, which was attended by eighty or ninety members of Local 369 BCW, and at which a resolution was passed declaring the disaffiliation of Local 369 from BCW and its affiliation with American Bakery and Confectionery Workers’ International Union AFL-CIO.[2] A charter was received *325 from ABC and on January 25, 1958, Local 369 ABC elected officers. Meanwhile, Roberts acted in the capacity of trustee for Local 369 BCW until October 14, 1958, when newly elected officers of Local 369 BCW assumed their duties. The newly organized and old Local 369 continued actively, each enjoying success in securing contracts with employers within the area served by their international affiliates. Both organizations, however, claimed to be in dominant control of old Local 369 BCW, and as such, entitled to the bank account in question.
When suit was filed the Bakery and Confectionery Workers’ International Union of America had its principal office in Washington, D. C. and claimed a membership of 150,000 members. BCW was organized as an unincorporated association in 1886. It affiliated with the American Federation of Labor in 1887 and continued the relationship after the AFL-CIO merger in 1955. Notice of that affiliation was imprinted on the flyleaf of the Constitution of BCW, and Article XI thereof makes special reference to the selection of delegates and other matters pertaining to attendance at conventions of the AFL-CIO. Counsel say also BCW gave recognition to its affiliation with AFL-CIO through its letterheads and by other means. Nonetheless, its Constitution contains no requirement of continued affiliation as a condition for the application of its provisions to member locals. Therefore, its expulsion by AFL-CIO on December 12, 1957, did not nullify or affect the contractual provisions binding Local 369 to BCW. As an independent local it could withdraw. The record plainly shows Local 369 BCW preferred not to withdraw.
Local 369 BCW was chartered in 1920 and was very active after 1937. In 1957 it had a membership of approximately 550, some 220 to 230 of whom were located in Shreveport, and the remainder were employed under contracts in Texarkana, Texas, Hope, Arkansas, Baton Rouge and Lafayette, Louisiana. J. H. Ferguson was president and A. L. Roberts was financial secretary of Local 369 at the time of the expulsion of its parent organization, which act of expulsion, as previously stated, caused a decided impact upon the membership of the Local and as a consequence approximately 80 members of Local 369 BCW, under the leadership of Ferguson, withdrew. However, Local 369 BCW was left intact and was still actively supported by a large majority of its membership. Forasmuch as both groups claim entitlement to the bank deposit, the issue presented is whether the funds in the registry of court should be distributed to the minority group, Local 369 ABC, or recognized as the property of the Local 369 BCW, which represents a majority of the members who have contributed to the fund involved, and which local has continued to function since the expulsion of its parent organization.
The withdrawal from a parent organization of the whole or a portion of the membership of an unincorporated local labor union necessarily raises a question as to the *326 status of the property rights of such local union, which must be determined by the nature of the contract between the local union and the parent organization as reflected in the constitution and bylaws of the national organization and in the terms of the charter granted by it to the local union. 31 Am.Jur., Labor, Sec. 45; 87 C.J.S. Trade Unions § 44(c). This legal principle was recognized by the Supreme Court of this state in Local Union No. 76, etc. v. United Brotherhood, etc., 1918, 143 La. 901, 79 So. 532. Appellant concedes the point and asserts in brief that the relationship between Local 369 BCW and BCW at the time of the expulsion of said International from AFL-CIO was contractual and the only contract was the Constitution.[3]
It should be pointed out that the fund in question, $10,718.92, represents an accumulation of local dues over the past years and no part of it is due to or claimed by BCW. It, therefore, seems to follow that every member of Local 369 BCW in good standing should have been afforded the opportunity to approve any change of affiliation by the local. Likewise, a transfer or distribution of the local’s funds should be determined by each member who had contributed thereto, and the action so taken should be governed by the contractual provisions of the constitution and charter. It appears Local 369 BCW never adopted bylaws different from those prescribed in the BCW Constitution for its locals.
At the meeting held on December 21, 1957, the resolution for disaffiliation provided that all property of Local 369 of any nature whatsoever should follow the decision of the majority. Although a majority of those present voted in favor of the resolution, those voting constituted a minority of the whole membership. It will be observed the action was repugnant to the above quoted provisions of the Constitution of BCW. Appellee also contends the meeting of December 21st was improper in that it was called without due notice and that it was not officially sanctioned forasmuch as on December 18, 1957, Ferguson and others who took such action had been removed through the appointment of A. L. Roberts as trustee, pursuant to provisions of the Constitution of BCW above set forth. Moreover, it is argued Local 369 ABC was a secessionist group, the departure of which did not affect Local 369 BCW as an entity, and that the latter continued in existence as an affiliate of BCW.
The position of appellant, however, is that Local 369 BCW and its members were no longer bound by the provisions of the Constitution of BCW following the expulsion of BCW by the AFL-CIO, foras-much as the principal consideration and cause which bound Local 369 BCW to its parent affiliate no longer existed due to the change of the status in the national union. The principle relied upon is stated as follows in American Jurisprudence:
“The value to a local union of continued affiliation with a national union may be altered by a change in the status of the national union resulting from its withdrawal, voluntarily or otherwise, from a federation of unions. *327 This factor has been considered in numerous cases where local unions have withdrawn. Where a local labor union has contracted with its parent, relying — either expressly or by implication — on the parent’s affiliation with one of the great trade associations, such affiliation is a condition to the affiliation of the local with the parent, and a breach of the condition relieves the local union from the provisions of the constitution, charter, and bylaws regarding its property rights. But abrogation of the contract between the local and the national union will not be implied in the absence of definite evidence that the original affiliation or its continuance was in reliance on the national union’s continued membership in the particular federation of unions. It has been stated that to justify a conclusion that continued affiliation of the national union with a federation of unions was an implied condition of the contract between the national union and a local, the affirmative proof of the condition must be quite clear and convincing.” 31 Am. Jur., Labor, Sec. 48, pp. 424-425.
After consideration of the argument tendered, we are of the opinion it is in-apposite for we are confronted herein with a dispute between two factions of Local 369 BCW caused by the withdrawal of a minority group which formed Local 369 ABC and affiliated with and received a charter from ABC. The parent organization, BCW, is not a party litigant herein and lays no claim to the funds in controversy. The doctrine of “frustration” invoked by counsel usually arises in a conflict between a parent and a local union, wherein it is asserted the parent association has breached an expressed or implied condition of the contract requiring that the parent association maintain its original affiliation with a particular federation of unions. The record does not show BCW resisted the withdrawal of Ferguson’s group and its affiliation with ABC, probably due to the fact the group so withdrawing did not constitute a majority of the membership of the local.
By way of summation, the situation as it appears to us is that J. H. Ferguson, president of Local 369 BCW when the BCW was expelled from the AFL-CIO, undertook to transfer Local 369 BCW, together with its property, to ABC, an affiliate of AFL-CIO. Before the attempted act of disaffiliation could be accomplished, Ferguson and the other local officials were removed by BCW in accordance with procedure prescribed in the Constitution which governed Local 369 BCW. Appellee, therefore, asserts the meeting of December 21, 1957, was invalid and was of no effect.
Counsel for appellant correctly states that if the contract between the parent and its local be terminated, of necessity, the effect would not be to dissolve or destroy the union, but rather it would continue to exist subject to the will of the majority of its members. Authority for this rule is found in 87 C.J.S. Trade Unions § 43, pp. 840-841:
“While a local union may lawfully contract to become a mere constituent of a parent association, or, by its conduct with respect to the parent body, be estopped to deny the contrary, as a general rule, an unincorporated local union affiliating with a parent association does not by such affiliation lose its character as a separate and distinct voluntary organization. By such affiliation the local does not become an indivisible and inseparable part of the parent organization, but owes its creation and continued existence to the will of its own members. The relationship between the parent association and its constituent local union is that the local unions are the constituent units in a voluntary confederation comprising the parent association. Where membership in a parent association is sought by a local union on the basis of an existing affiliation between the local *328 and a superior organization, such basis becomes and endures as a continuing condition of the membership it attracts, and this condition need not be explicitly expressed but is implicit in the circumstances under which members are sought and their association induced by the local union. If the constitution of a local union definitely requires affiliation by the parent association with a superior organization and such requirement is approved by the parent body, it becomes an inducement for the local union associating with the parent body and as long as the required affiliation with the superior organization exists the contract between the local and the parent body exists and the provisions of the constitutions of the respective organizations are binding on them. Therefore, if such implied or express condition exists and the parent association is expelled from the superior organization, the contract between the parent body and the local union is terminated and the local is not bound to continue membership in the parent body.”
The principle enunciated is substantially the same as set forth in 31 Am.Jur., Labor, Sec. 48, supra, wherein it is noted that abrogation of the contract between the local and the national union will not be implied in the absence of definite evidence that the original affiliation or its continuance was in reliance on the national union’s continued membership in the particular federation of unions, and that affirmative proof of the condition must be clear and convincing. The affirmative proof required herein has not been established. Appellants’ position stressed only: the length of the affiliation, promotion of the interests of labor unions through continued effort in the state and federal legislatures, alliance with other labor unions for mutual protection, and the matter of representation at conventions of AFI^CIO. Though the foregoing evidence be accepted as true and affording relative advantages to the affiliate, it was not of paramount importance to a majority of the members of Local 369 BCW, who remained loyal to BCW.
We have been referred to numerous cases cited as recognizing the doctrine of frustration, originally enunciated in Krell v. Henry, 2 K.B. 740 C.A. (1903), an English case. Some of the citations were cases from trial courts, which, when reported, had not become final. Most of the appellate court cases cited are the topic of discussion in an excellent annotation appearing in 23 A.L.R.2d p. 1209 et seq, following the report of Local 1140 United Electrical, etc. v. United Electrical, etc., 1950, 232 Minn. 217, 45 N.W.2d 408, 23 A.L.R.2d 1197. The following quotation from page 1213 of the annotation seems to have particular application to the instant case, with the exception that herein the secession was by a minority group:
“If, instead of the entire local union seceding, there is but a majority of the members disavowing their allegiance to the parent union, a conflict may arise between the parent organization and the seceding majority or between the latter and the loyal minority group. In the first situation, the courts usually follow the contract, and if a forfeiture provision exists the parent can claim the property in the case of the secession of the majority of the members of the local. The more frequent situation, however, which arises from a secession of a majority of the members of a local union is a dispute arising between the two local factions. In this situation the courts generally hold, regardless of the existence of a forfeiture clause, that the loyal minority is entitled to the funds.”
It is our conclusion appellants have failed to present clear and convincing proof: first, that a majority of Local 369 BCW disaffiliated from BCW, and second, that the contractual relationship between Local' 369 BCW and its national affiliate *329 BCW was terminated by reason of the expulsion of BCW from AFL-CIO. It was incumbent upon appellants to furnish proof of these two major premises of their case in order to justify a decree in their favor.
They have not done this, and, therefore, the judgment is affirmed at appellants’ cost.

. “Sec. 4(a) The authority of the General Executive Board to appoint special trustees over subordinate bodies may be exercised whenever the General Executive Board has substantial reason to believe that the affairs of the subordinate body are conducted in such a manner as to jeopardize the rights and interests of a member of that body, the local union, or of the International Union.
“(b) Because of the emergency nature of this power a trustee may be appointed without previous notice or hearing.

“(d) The special trustee shall take possession of all the funds, books, papers, and other property of the subordinate affiliate and tender a receipt for same. He stall institute all necessary action to recover money or other properties of the subordinate affiliate.
“(e) The special trustee shall operate for whatever time is necessary not in excess of one year, but may be continued beyond one year * *

. The resolution reads in part:
“Whereas, the AEL-CIO on December 12, 1957, did charter the American Bakery and Confectionery Workers’ International Union:
“Now, Therefore, Be It Resolved:
“1. That Local 369 hereby affirms and declares that the Bakery and Confectionery Workers’ International Union of America has violated the fundamental *325 and basic terms and conditions of its relationship, understanding, compact and contract with its members and Locals and has by its own actions destroyed the bonds of affiliation between itself and this Local, and that Local 369 hereby disaffiliates from the Bakery and Confectionery Workers’ International Union of America; and
“2. That all property of Local 369 of any nature whatsoever shall follow the decision of the majority; and
“3. That the Local officers take all steps necessary to protect the property and assets of the Local; and
“4. That all Local officers shall continue in their present status; and
“5. That Local 369 hereby affiliates with the American Bakery and Confectionery Workers’ International Union, AFL-CIO, and directs its President forthwith to apply to said Union for a Local Union charter, and to take all steps necessary to consummate and to effectuate affiliation with the American Bakery and Confectionery Workers’ International Union, AFL-CIO.”

. The Constitution of BCW specifically provides: “No local can dissolve while seven members remain in good standing and desire to retain the charter”, and also stipulates:
Sec. 8.
“All funds and property of the local union shall be held by it in the name of the local union to be used only for the purpose of effectuating the objectives of this Constitution and in accordance with its provisions.
“Should a local union dissolve, secede, or have its charter revoked all its money and property shall revert to the ownership of the International Union, and the international Secretary-Treasurer may authorize, in writing, a member of a nearby local or a representative to take charge of and turn same over to the International Union. The General Executive Board may prosecute any officer or member of any such local union who shall refuse to deliver to such authorized member or representative any of the said funds and/or property. * * * ”