**LOCAL NO. 218, BAKERY & CONFECTION-ERY WORKERS INTERNATIONAL UN-ION OF AMERICA et al., Appellants,**

**v.**

**LOCAL NO. ——, AMERICAN BAKERY & CONFECTIONERY WORKERS INTER-NATIONAL UNION, AFL–CIO et al., Re-spondents.**

No. 51519.

Supreme Court of Missouri,
Division No. 2.

July 11, 1966.

Motion for Rehearing or for Transfer to
Court En Banc Denied Sept. 12, 1966.

John J. Manning, Robert S. Fousek, Kansas City, for appellants.

Ben W. Swofford, Phillip L. Waisblum, Kansas City, for respondents, Swofford & Waisblum, Kansas City, of counsel.

STOCKARD, Commissioner.

This case involves the right of a local labor union to retain and keep its property

and assets after disaffiliation from an international union.

The Bakery & Confectionery Workers International Union of America (hereafter referred to as "BCW"), while affiliated with the American Federation of Labor (hereafter referred to as "AFL"), issued a charter to Local 218 in Kansas City, Missouri. In 1955 the AFL and the Congress of Industrial Organizations (hereafter referred to as "CIO") merged into what is known in abbreviated form as the AFL–CIO. BCW was instrumental in bringing about this merger, but on December 7, 1957, it was expelled from its affiliation with AFL–CIO because of internal corruption and its failure to comply with certain orders of the executive council of the AFL–CIO which had been recommended by the ethical practices committee of that organization. The reasons for and the circumstances of this explusion are set forth in the report of the AFL–CIO ethical practices committee, introduced in evidence as an exhibit, and a rather complete summary may be found in Crocker v. Weil, 227 Or. 260, 361 P.2d 1014. At the same general convention of the AFL–CIO at which BCW was expelled, AFL–CIO chartered a new international union known as the American Bakery and Confectionery Workers International Union (hereafter referred to as "ABC"). On December 28, 1957, at a regular meeting of Local 218, with approximately half of the active members present, the members voted 253 to none (with one and possibly two members who were present not voting) that Local 218 disaffiliate from BCW and that it affiliate with ABC, and that all assets and property of Local 218 held prior to disaffiliation be held and used by Local 218 in its new affiliation. Subsequently, at a meeting in January 1958, this action of disaffiliation from BCW, and affiliation with ABC with transfer of assets and property, was "ratified" by a vote of 424 to none. On January 12, 1958, this disaffiliated group received a charter from ABC in which it was designated as Local 218. Reference hereafter to the status of this organization after its affiliation with ABC will be to Local 218 ABC. It elected as officers the same persons who held office before the disaffiliation and continued an uninterrupted function as a labor organization. In 1958, after an election, it was certified by the National Labor Relations Board as the collective bargaining representative of the same workers and class of workers in the bakery industry in the greater Kansas City area formerly represented by Local 218 BCW.

After the disaffiliation meeting of December 28, 1957, a group of persons (possibly as many as thirty-two but the status of most of these is challenged and their status is questionable) claimed to remain as members of Local 218 BCW, and twelve of them, claiming to represent all the members of Local 218 BCW as a class, brought suit to obtain possession and control of the assets and property of Local 218 BCW which was taken by and placed under the control of Local 218 ABC. We note, however, that it appears that six of these twelve may have been named as plaintiffs without their knowledge and permission. The trial court issued its temporary injunction which prohibited any exercise of control over or use of such assets and property by Local 218 ABC and its members, and also prohibited the disaffiliated group from using the name "Local No. 218," and as a result it has since been known as "Local No. ——, American Bakery & Confectionery Workers International Union, AFL–CIO." At the trial on the merits the temporary injunction was dissolved, and the issues were found in favor of Local 218 ABC and its members.

The record shows that subsequent to the disaffiliation meeting in December 1957, a local union designated at one time as Local 218A, and later as Local 465, purported to merge with Local 218 BCW. While we mention this, we are of the opinion that this fact has no bearing on the merits of the pending controversy.

Local 218, prior to the act of disaffiliation from BCW, accumulated substantial assets, including government bonds with a value in excess of $50,000 and an interest in an office building. There is no contention that these assets were not accumulated by the local union for uses by it and its members, and the constitution of BCW provided that all funds and property of local unions should be held by them in the name of the local. Although appellants present several points in their brief they do not challenge the legality of the disaffiliation meeting or the action of disaffiliation there taken. The critical question on this appeal, and upon which all issues rest, is whether a local union can take with it and retain its property and assets when a majority of its members vote to sever its affiliation with a national organization on the ground the national organization was expelled from a national federation of unions because of internal corruption.

■ In determining the effect on the property rights of a local union which results from the withdrawal by the local union from its affiliation with a national union, it is essential to determine the legal relation between the national and local unions, and also between the members of the local union. Both craft and industrial unions are generally organized on a national basis, with local unions chartered by the national body on a regional basis, and the national unions are in turn loosely federated into a central body made up of the various autonomous national unions. 31 Am.Jur. Labor § 13. In this case Local 218 BCW was chartered by BCW, and BCW in turn was affiliated first with AFL and later with AFL–CIO. The courts have held almost uniformly that these relationships are contractual in nature and that the contract consists of the articles of agreement of a labor union, whether called a constitution, charter, bylaws or some other name, which the courts will enforce if not immoral or contrary to public policy or applicable law. 31 Am.Jur. Labor §§ 33 and 42; Annotation 23 A.L.R.2d § 3 at page

1214 et seq.; 87 C.J.S. Trade Unions § 11; Junkins v. Local Union No. 6313, Communication Workers of America, 241 Mo. App. 1029, 271 S.W.2d 71; Robinson v. Nick, 235 Mo.App. 461, 136 S.W.2d 374; Farrar v. Messmer, Mo.App., 368 S.W.2d 933; Way v. Patton, 195 Or. 36, 58, 241 P.2d 895, 906; Olson v. Carbonara, 21 Ill.App.2d 69, 157 N.E.2d 273; Liggett v. Koivunen, 227 Minn. 114, 34 N.W.2d 345; Roberts v. Ferguson, La.App., 131 So.2d 323; Fitzgerald v. Abramson, 89 F.Supp. 504. "The local union is a separate and distinct voluntary association which owes its creation and continued existence to the will of its own members." Duris v. Iozzi, 6 N.J.Super. 530, 70 A.2d 793, 796; International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO v. Becherer, 142 N.J.Eq. 561, 61 A.2d 16, 20, affirmed 4 N.J.Super. 456, 67 A.2d 900; Harker v. McKissock, 7 N.J. 323, 81 A.2d 480. Dues by the members are not paid directly to the national organization but to the local union which in turn remits out of those dues a per capita tax or assessment to the national organization. The local union could continue its existence and function without any relationship to the national organization. Bozeman v. Fitzmaurice, Ohio App., 107 N.E.2d 627, 629. This was recognized in Farrar v. Messmer, Mo.App., 368 S.W.2d 933, where a union retained its status though not affiliated with a national union and even though it was not the certified bargaining representative for the employees of any employer. National affiliation is a voluntary arrangement, and once established creates a contractual relationship. Harker v. McKissock, supra; 87 C.J.S. Trade Unions § 43.

In this case the constitution of BCW provided, among other things, that "Should a local union dissolve, secede, or have its charter revoked all its money and property shall revert to the ownership of the International Union * * *," and that no local can dissolve "while seven members remain in good standing and desire to retain the

charter." BCW is not a party to this suit, and there is no person who is a party claiming to represent BCW. The parties plaintiff are certain persons, more than seven in number, claiming to be members of Local 218 BCW. There is no contention that the assets and property should "revert to the ownership" of BCW. Instead, the contention of plaintiffs necessarily is that Local 218 BCW is still in existence, and that those persons who "disaffiliated" thereby voluntarily withdrew from Local 218 BCW and abandoned their claim to any interest in or right to the assets and property of Local 218 BCW, or as stated by appellants in their brief, the "seceding members of a labor organization have no right or title to the property of such labor organization, particularly where the contract [constitution] specifically prohibits such members from acquiring title to such properties."

Respondents admit that the constitution of BCW and the bylaws of Local 218 BCW constituted a contract between BCW and the members of Local 218 BCW, and also between the members of Local 218 BCW. They contend, and the trial court held, that an implied condition of the contract was the continued affiliation of BCW with AFL and later AFL–CIO, and that the "expulsion of BCW from AFL–CIO for corruption breached the contract and voided the terms and provisions thereof, and such contract was no longer binding upon the members of Local 218 BCW, and that thereafter [they] had the right to disaffiliate from BCW by any means they chose."

Property rights in the union hierarchy became a judicial problem of some magnitude after 1949 when mass disaffiliation situations arose following the expulsion of the United Electrical, Radio and Machine Workers of America (hereafter referred to as ("UE") from the CIO because of alleged communist infiltration of UE and because of its communist activities. See Clark v. Fitzgerald, 197 Misc. 355, 93 N.Y. S.2d 768; Duris v. Iozzi, supra; Local 1140, United Electrical, Radio and Machine Workers of America v. United Electrical, Radio and Machine Workers of America, 232 Minn. 217, 45 N.W.2d 408, 23 A.L.R.2d 1197; Fitzgerald v. Abramson, 89 F.Supp. 504; Bozeman v. Fitzmaurice, supra; Edwards v. Leopoldi, 20 N.J.Super. 43, 89 A.2d 264. The problem also arose in connection with the expulsion from the AFL of the International Longshoremen's Association because it "permitted gangsters, racketeers and thugs to fasten themselves to the body of its organization, infecting it with corruption and destroying its integrity, its effectiveness and its trade-union character." See Bradley v. O'Hare, 11 A.D.2d 15, 202 N.Y.S.2d 141. The International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America was ousted from the AFL and it later affiliated with the CIO, but Local 2 of that national union then disaffiliated and returned to the fold of the AFL with the resulting problems concerning property rights as shown in International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO v. Becherer, supra. The expulsion of BCW by the AFL–CIO because of internal corruption has also been a fruitful source of litigation in the courts. For example, see Crocker v. Weil, supra; Crawford v. Newman, 13 Misc.2d 198, 175 N.Y.S.2d 903; Olson v. Carbonara, 21 Ill.App.2d 69, 157 N. E.2d 273; Alvino v. Carraccio, 400 Pa. 477, 162 A.2d 358; and Olson v. Miller, 105 U.S.App.D.C. 55, 263 F.2d 738. Reported trial court rulings include the following: American Bakery and Confectionery Workers International Union AFL–CIO, Local 253 v. Russellburg (Ohio Ct. of Common Pleas), 44 L.R.R.M. 2055; and King v. American Bakery and Confectionery Workers International Union, AFL–CIO (Calif.Super.Ct.), 41 L.R.R.M. 2617.

In cases where there was no expulsion of the national union from a national federation because of some misconduct, or at least where that circumstance was not shown, the courts generally applied what is referred to as the "orthodox contract

doctrine," 45 Va.Law Rev. at p. 246, and when a local union disaffiliated from its national union the courts enforced strictly the provision in the constitution that the property and assets of the local union were forfeited to or reverted to the national union. For example, see Harker v. Mc-Kissock, 7 N.J. 323, 81 A.2d 480, and also the cases cited in §§ 3 and 10 of the annotation in 23 A.L.R.2d. Also, when there remained a "loyal minority" greater than the minimum number provided in the constitution, according to the terms of the constitution the property and assets were retained by that "loyal minority." See the cases cited in § 11 of the above referred to annotation and the comment on p. 1213 of 23 A.L.R.2d. However, with the advent of the "expulsion" cases, additional factors were presented. There was a mass disaffiliation as distinguished from individual and isolated cases, the disaffiliation was the direct result of the expulsion of the national union from a mutually beneficial association with a national federation, and the cause of the expulsion and the disaffiliation was the gross misconduct of the national union. The courts have uniformly applied several theories "which are more consistent with the equities of the particular expulsion situation." 45 Va.Law Rev. at pp. 247–248. In addition to the theory of "clean hands," (see Crawford v. Newman, 175 N.Y.S.2d 903, the ruling of a New York trial court in Fitzgerald v. Riverside Labor Hall, Inc., 27 L.R.R.M. 2366, and the dictum statement in Morrison v. Majestic Laundry Sys., Inc., Sup., 103 N.Y.S.2d 791, 800), and the theory of "trust funds" (see International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO v. Becherer, supra), the theory most widely applied when a local union has disaffiliated from a national union which has been expelled from a national federation because of communist activities, as in the case of the UE, or because of internal corruption, as in the case of BCW, is that the expulsion is deemed to constitute a breach of an *implied* and *material* condi-

tion of the contract between the international union and the local union. In other words, by its own wrongful conduct, the international union has made impossible of performance a material implied provision of the contract, namely, continued affiliation (for the mutual benefit of the international union and the affiliated locals) with a federation of national unions.

This theory of breach by the national union of an implied and material provision of the contract is set forth in 31 Am.Jur. Labor § 48 as follows: "The value to a local union of continued affiliation with a national union may be altered by a change in the status of the national union resulting from its withdrawal, voluntarily or otherwise, from a federation of unions. This factor has been considered in numerous cases where local unions have withdrawn. Where a local labor union has contracted with its parent, relying—either expressly or by implication—on the parent's affiliation with one of the great trade associations, such affiliation is a condition to the affiliation of the local with the parent, and a breach of the condition relieves the local union from the provisions of the constitution, charter, and bylaws regarding its property rights. But abrogation of the contract between the local and the national union will not be implied in the absence of definite evidence that the original affiliation or its continuance was in reliance on the national union's continued membership in the particular federation of unions." This theory has sometimes been referred to as the doctrine of frustration when the national union has by its wrongful conduct brought about a condition whereby the underlying purpose and objective of the affiliation of the local union with the national union has been frustrated. See Alvino v. Carraccio, supra; Olson v. Carbonara, supra; and Duris v. Iozzi, supra. But when the affiliation of the national union with a federation of unions is terminated by expulsion for gross misconduct, whether referred to as the doctrine of frustration or as a breach of

an implied but material condition of the contract, the underlying principle is the same, namely, that the local union is relieved from contractual provisions governing the disposition of local union property because the national union, by its gross misconduct, has frustrated the underlying purpose of the affiliation and thereby breached an implied condition of the contract of affiliation. In the factual situation we have in this case, with only minor differences of no consequence, and involving the disaffiliation of a local union from BCW following its expulsion from AFL–CIO because of internal corruption, courts have held that there was a breach by BCW of an implied and material condition of the contract between BCW and the local union, and that upon disaffiliation by the local the provisions of the constitution of BCW governing property rights were not binding on the disaffiliating local. See Crocker v. Weil, supra; Crawford v. Newman, supra; Olson v. Carbonara, supra; Alvino v. Carraccio, supra. In addition, the same ruling was made by trial courts in reported opinions in American Bakery and Confectionery Workers International Union AFL–CIO, Local 253 v. Russellburg, supra; King v. American Bakery and Confectionery Workers International Union AFL–CIO, supra. In other cases involving the same factual situation, except that a local union disaffiliated from the UE following its expulsion from the CIO because of communist activities, the courts have reached the same result. See Clark v. Fitzgerald, supra; Duris v. Iozzi, supra; Local 1140, United Electrical, Radio and Machine Workers of America v. United Electrical, Radio and Machine Workers of America, supra; and Bozeman v. Fitzmaurice, supra. In the last cited case the court held that the fact that more than seven (the UE constitution contained similar provisions to that of BCW) members voted against disaffiliation may have resulted in the charter from UE being retained for that minority, but the local union as an organization could disaffiliate, and that it was "not a case where

members of a labor organization seceded from its [their?] Union. The entire Local acted and as a Local disaffiliated from U.E." It was further held that the expulsion of UE from the CIO constituted a breach of a material condition of the contractual relationship, and "After this implied condition in the contract was destroyed the contract was broken and this put an end to the contract as far as the local's obligations are concerned. This excuses the Local from further obligations, and performance. The obligation is not stronger or more enduring than the foundation upon which it rests. Local 707 after expulsion of U.E. had a right to disaffiliate from U.E. and the Local may retain its assets and take them with it to a new affiliation."

■ In only one case, Roberts v. Ferguson, La.App., 131 So.2d 323, involving property rights of a local union which disaffiliated from BCW has the court refused to rule in favor of the local union, but the theory of a breach of an implied condition or frustration of purpose was expressly approved. The deficiency found in that case was that there was insufficient proof "that a majority of Local 369 BCW disaffiliated from BCW, and second, that the contractual relationship between Local 369 BCW and its national affiliate BCW was terminated by reason of the expulsion of BCW from AFL–CIO." See also Edwards v. Leopoldi, 20 N.J.Super. 43, 89 A.2d 264, which pertained to a disaffiliating local union from UE. In the pending case there is no question about a majority of Local 218 approving the disaffiliation. It was the unanimous vote of those voting. Also, in the trial of the case respondents made convincing proof of facts and circumstances which leave no possible reasonable conclusion other than that the expulsion of BCW from the AFL–CIO was the reason for the disaffiliation, and that continued affiliation of BCW with a national labor federation was a material condition of the continued affiliation of Local 218 with BCW. The trial court found such an

implied condition to exist and we agree with that finding. In Alvino v. Carraccio, supra, involving the disaffiliation of a local union from BCW, the court reviewed factual elements which were the same as those established by evidence in this case, and concluded that continued affiliation of BCW with the AFL–CIO was a material implied condition of continued affiliation of the local union with BCW. See also the discussions in Olson v. Carbonara, supra, and King v. American Bakery and Confectionery Workers International Union, AFL–CIO, supra.

■ We note one difference between the factual situation in this case and in most of the cases we have cited. BCW is not a party in fact or by representation. There is no attempt to have the property and assets of Local 218 revert to BCW. A "loyal minority" of Local 218 BCW is claiming the property in this case. As in the case of Bozeman v. Fitzmaurice, supra, this is not a situation where members "seceded" from Local 218 BCW. It is a situation where Local 218 as an association disaffiliated from BCW by a unanimous vote of the members voting. The "seceding" members, if any, were those who remained in the "loyal minority." The essential question in this situation is whether there is any contract provisions binding on Local 218 which prohibited it from retaining its property and assets after it disaffiliated from BCW, and in view of the application of the theory of a breach by BCW of an implied but material condition of the contract of affiliation, the provisions of that contract governing the disposition of property and assets are not controlling. The "loyal minority" stand in no better position than BCW. In the absence of binding contract provisions providing otherwise, their rights are governed by the rule of the majority of the membership of their local union. Appellants present no contention that absent the application of the terms of the BCW constitution, Local 218 could not take with it and retain its property and assets.

One further contention of appellants deserves comment. They contend that "the law applicable to the enforcement of the contract * * * is governed by Federal substantive law under Section 301(a) of the Labor-Management Relations Act, as amended, and the Federal decisions interpreting that law." In all the reported cases pertaining to the property rights of local unions upon disaffiliation from both the UE and BCW we find no such contention being previously made, and we do not find that the courts have stated that "federal law" only is applicable. We deem it unnecessary to rule in this case whether "federal law" only is applicable because in our opinion "federal law" is not inconsistent with the result we have reached. Appellants cite Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Local 33, International Hod Carriers Building and Common Laborers' Union of America v. Mason Tenders District Council of Greater New York, 2 Cir., 291 F.2d 496; Burlesque Artists v. Variety Artists (U.S.Dist.Ct., N.Y.), 42 L.R.R.M. 2818; Low v. Harris, 7 Cir., 90 F.2d 783; and Local 1104 United Electrical, Radio & Machine Workers of America (UE) v. Wagner Electric Corp., D.C., 109 F.Supp. 675.

Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), provides as follows: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." In Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, the United States Supreme Court, speaking through Mr. Justice White, stated that this section "has substantive content and that Congress has directed the

courts to formulate and apply federal law to suits for violation of collective bargaining contracts." Quoting then from Local 174, Teamsters, etc. v. Lucas Flour Co., supra, the case cited by appellants, the court said: " 'The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' " However, neither in the Smith case nor in the Lucas Flour Co. case did the United States Supreme Court purport to "formulate" federal law applicable to the factual situation in this case. This is equally true as to the "formulation" of federal law by lower federal courts in the Mason Tenders case and the Burlesque Artists case. In Low v. Harris, supra, decided in 1937, and with no reference whatever being made to the theory of breach of an implied material condition, and in which there was no disaffiliation of a local union brought about by the expulsion of a national union from a national federation because of gross misconduct, the court held that in the factual situation of that case money in the union treasury remained the property of the local union when it was not dissolved but a majority "voted to sever all relations with said union and to organize a local union and affiliate with the Progressive Miners of America * * *." No federal law contrary to the result we have reached was "formulated" by that decision. In the remaining case, the Wagner Electric case, there was a suit by a local union against an employer based on an alleged violation of a collective bargaining agreement for failure to remit to the union dues collected by the employer pursuant to an agreed "check-off" system. The local union was affiliated with UE and the employer interpleaded another local affiliated with a new national union formed after the UE had been expelled from the CIO. However, the court found that "in no case did a majority entitled to vote, that is 'the majority of the members', ratify the resolution" to disaffiliate from UE, and the

"loyal members" continued as a local union and it was certified as a collective bargaining representative for certain employees by the National Labor Relations Board. The result of the case was that as between the local union affiliated with UE and the new local, the dues "checked-off" should be paid according to the assignments executed by the employees. The case did not involve any issue of breach of an implied material condition by the national union. By this case no "federal law" was "formulated" on the issue in this case.

The only federal case we have found in which the issue of this case was mentioned is Fitzgerald v. Abramson, 89 F.Supp. 504. That was a ruling on an application for a temporary injunction in a case where UE, following its expulsion from the CIO, sought to retain control of property of a local after a purported disaffiliation. The court said this: "The defendants suggest that by reason of the expulsion of UE from the CIO there has been a frustration of the underlying purposes of the contract (the constitution) between UE and its members and locals, with the result that Local 450 was relieved of responsibility to UE. Whether there has been frustration presents a sharply contested issue of fact which I am unable to resolve on affidavits." This does not indicate that the "federal law" requires a result different from that we have reached, but it does indicate that the federal court recognized that frustration of the purposes of the contract could amount to a breach thereof which, if proved, could release the local union from the contractual limitations on its control of union property.

We conclude that the expulsion of BCW from the AFL–CIO because of internal corruption, an issue not disputed by appellants, constituted a breach by BCW of an implied but material provision of the contract of affiliation; that Local 218 as an association had a right to and did disaffiliate from BCW; that upon such disaffiliation the terms of the BCW constitu-

tion (contract) pertaining to the disposition of the property of local unions were not binding on Local 218 and its members, and Local 218 could, and by a unanimous vote of its members who voted (which constituted a substantial majority of the total membership) did take with it the property and assets previously accumulated by the local union for the benefit of its members.

The judgment is affirmed.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.