Dear Senator Wilson:
This letter is in response to your request for an opinion on the following questions:
 Does the Cancer Commission have the power to enter into an affiliation agreement with a private, not-for-profit Missouri Corporation, which conducts cancer research, and designate that corporation to be officially known as the research arm for the State Cancer Center: (a) Additionally, may the corporation be authorized to act as the official agent and negotiating body for all federally and nonfederally supported research grants, contracts, gifts, donations, letters, patents and royalties on the part of the State Cancer Center's staff and the corporation's staff; (b) What effect did the 1983 amendments to Chapter 200 have in your decision, in other words, could such an affiliation agreement as described above have been properly entered into by the Cancer Commission prior to the 1983 amendments to Chapter 200?
It is important at the outset to understand what is meant by "affiliation". Black's Law Dictionary, Fifth Edition (1981) defines "affiliation" as:
 Imports less than membership in an organization, but more than sympathy, and a working alliance to bring to fruition the proscribed program of a prescribed organization, as distinguished from mere cooperation with a prescribed organization in lawful activities, is essential. . . .
Several Missouri court cases have discussed the nature of an "affiliation". In Baker v. Fenley, 128 S.W.2d 295, 298 (Mo.App. 1939) the court said in defining "affiliate":
 We do think that in order for such a relationship to exist that one body or person should have a financial interest, at least, in the other's business, or a voice in its management, to be either an affiliate or subsidiary.
Furthermore, an affiliation once established creates a contractual relationship. Local No. 218, Bakery and Confectionery WorkersInternational Union of America v. Local No. ___, American Bakery andConfectionery Workers International Union, 405 S.W.2d 917, 919 (Mo. 1966). It is also important to keep in mind that an "affiliation is not a merger, but both entities continue to exist as separate bodies or organizations. Missouri State Teachers Association v.St. Louis Suburban Teachers Association, 622 S.W.2d 745, 752
(Mo.App. 1981).
A recent federal decision also provides an important insight into an "affiliation". The Ninth Circuit in Travelers IndemnityCompany v. United States of America, 543 F.2d 71, 76 (9th Cir. 1976) had to define the term "affiliated". The court said that such "envision[s] an intimate business relationship in which significant aspects of financial and managerial control of the insured and the affiliate or associate are integrated. More is required than common ownership and a limited sharing of facilities which aids each owner to pursue his independent and separate objectives." The United States Court of Appeals in that case discussed several other federal opinions which supported the Ninth Circuit's interpretation of "affiliate". Several Missouri statutes also include in the definition of "affiliate" a measure of control. See Sections448.1-103(1), RSMo Supp. 1984,[1] and 382.010, RSMo 1978.
The General Assembly provided the Cancer Commission with the authority to enter into affiliation agreements with a limited variety of institutions for a limited purpose. Section 200.081 provides:
 The state cancer center may establish affiliation agreements between the center, other institutions, and research facilities for promoting a coordinated approach to cancer treatment, research, and medical education.
Clearly, the Cancer Commission could enter into an affiliation agreement with a private, not-for-profit Missouri corporation which conducts cancer research under the authority of Section 200.081 for the purpose of conducting cancer research. While the Cancer Commission is authorized to enter into affiliation agreements for coordinated approaches to cancer research, it is doubtful whether it could designate any corporation as the State Cancer Center's official research arm, because of the general principle that public officials cannot delegate the duties and responsibilities which the law compels them to administer. This general principle will be discussed fully in answer to the second question concerning the ability to designate a corporation as an official agent for the State Cancer Center.
Additionally, the Cancer Commission could not enter into an affiliation agreement that failed to terminate after several years. In Opinion Letter No. 5, Dennis, 1983, this office concluded that a county memorial hospital could not enter into a ten-year contract with a physician for his services. Our office relied on Opinion No. 92, Volkmer, 1961, which concluded that a county court may lease property but not for a period ninety-nine years or even twenty years. Our office also addressed this issue in Opinion No. 304, Kiser, 1965, where we concluded that a county court may lease property for two or five years, but anything in excess of twenty-five years would be an unreasonable exercise of power. Therefore, an affiliation agreement which failed to provide for termination after several years would be an unreasonable exercise of power.
In response to your second question which concerns whether the corporation could be authorized to act as the official agent for the State Cancer Center for a variety of purposes, our office believes this would be an impermissible delegation of authority. In Opinion Letter No. 16, Doctorian, 1984, our office concluded that a county memorial hospital may not employ a corporation to manage the institution for them. Furthermore, in Opinion Letter No. 21, Strong, 1984, we concluded that a county hospital may not contract with a research management organization when such would be an impermissible delegation of governmental functions.
The State Cancer Commission is specifically authorized by Section 200.020.4 to "accept gifts, grants or other transfers of property of any sort on behalf of the state cancer center." Additionally, the Cancer Commission is authorized by Section 200.071 to establish procurement and purchasing procedures for the Center. Any agreement which deprived the Cancer Commission from being the negotiating body for the State Cancer Center for contracts would be an impermissible delegation of their express authority under Section 200.071. Furthermore, under Section 200.020.4, any such agreement would be an impermissible delegation of governmental functions where such a corporation was the official agent for all gifts and donations.
Furthermore, an affiliation agreement, as described, would create in the corporation the powers of a general agent. A general agent is one who is empowered to transact all business of his principal, or to transact all business of another of a particular kind, or in a particular place, or to do all acts connected with a particular business. State ex rel. M.F.A. Mutual InsuranceCompany v. Rooney, 406 S.W.2d 1, 4 (Mo. banc 1966). Clearly, the corporation would be a general agent as opposed to a special agent because the purpose of a special agent is generally for the accomplishment of a single transaction or a transaction with designated persons. Farm Home Savings Loan Association ofMissouri v. Stubbs, 98 S.W.2d 320, 332 (Mo.App. 1936). The very fact that the corporation would be a general agent for the State Cancer Commission would be an impermissible delegation of powers because the acts of an agent, bind the principal. King v. Pearce,40 Mo. 222, 223 (1867).
We understand your third question concerning the amendments in 1983 to Chapter 200, to be addressed to the exemption from the State Purchasing Law, Chapter 34, RSMo 1978 and Supp. 1984. In 1982, the State Cancer Commission was required to make their purchases for the Center in accordance with the State Purchasing Law. See Section 200.071, RSMo Supp. 1982 (repealed). However, in 1983, House Bill 549 amended Section 200.071 so that the State Cancer Center "shall be" exempt from Chapter 34. Our office concluded that the State Cancer Center was exempt from Chapter 34 in Opinion No. 102, Holt, 1983. However, an affiliation agreement which was entered into prior to the amendment to Section 200.071, which became effective on June 22, 1983, would be invalid if it violated Chapter 34.[2]
Section 34.030, RSMo 1978, sets out the duties of the Commissioner of Administration. It provides that the Commissioner of Administration shall purchase all supplies for all departments. Section 34.010.2, RSMo 1978, defines "department" to include commissions. Section 34.010.4, RSMo 1978, defines "supplies" to include contractual services. In Opinion No. 163, Nielsen, 1975,[3]
our office concluded that the list of services in Section 34.010.1, RSMo 1978, which is a definition of "contractual services", was not all-inclusive. In other words, in the absence of an exception such as presently exists, most other services would fall within the statutory definition even though they were not expressly set out therein.
The amendment to Section 200.071 in 1983 did not make an invalid agreement suddenly valid. Article I, Section 13, of the Missouri Constitution prohibits the enactment of any law which is retroactive in operation and affects individual rights. The General Assembly may pass retroactive laws that affect the state only, because there is no private interest involved. State exrel. Meyer v. Cobb, 467 S.W.2d 854, 856 (Mo. 1971). In our view, Section 200.071 only addresses the future operation of the State Cancer Center and does not address the past, because the General Assembly did not manifest a clear intent that the statutory change apply retrospectively.
Therefore, the Cancer Commission does not have the authority to enter into an affiliation agreement for an unlimited period of time or which would designate a Missouri corporation as the official agent and negotiating body for grants, contracts, gifts and donations.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
[1] All statutory references are to RSMo Supp. 1984, unless otherwise indicated.
[2] Our office has concluded that there is an exception under Chapter 34 for the legal and medical professions, Opinion Letter No. 22, Mueller, 1980. The Commissioner of Administration had authority to authorize direct purchases under Section 34.100, RSMo 1978, and presently has such authority under Section 34.100, RSMo Supp. 1984.
[3] We have not enclosed copies of the Attorney General opinions cited.