O'NEILL v. DELANEY.

(Supreme Court, Special Term, New York County. October 5, 1909.)

1. TRADE UNIONS &#x269;⇒7—PROPERTY—BRANCH UNIONS—TITLE TO FUNDS.

Where the constitution of a labor union provided that a branch union should control its own finances, that death benefits to members' families should be voted by a branch from its funds, not making the branches accountable to the parent union for sums received and disbursed, nor requiring them to make any payment to it, except in the case of a fine imposed upon a branch, or assessment levied for the union's expenses, a branch union had title to the funds collected by it from its members.

[Ed. Note.—For other cases, see Trade Unions, Dec. Dig. &#x269;⇒7.]

2. TRADE UNIONS &#x269;⇒7—APPLICATION OF FUNDS—POWER OF MEMBERS.

Where a branch labor union was organized and funds collected from its members under an express agreement between them whereby the organization was to have a definite name and purpose inseparably connected with the longshoremen's union, to which it was subservient, a mere majority of members, in course of a subsequent disruption of the branch

---

&#x269;⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

union, could not make a transfer of the funds of the branch to another organization, though all members of the branch could, by their own act or agreement, apply the funds to any purpose deemed desirable.

[Ed. Note.—For other cases, see Trade Unions, Dec. Dig. ☞7.]

Action by one O'Neill against one Delaney. Form of decision and judgment to be presented in accordance with opinion.

Stuart G. Gibboney, of New York City, for plaintiff.
David McClure, of New York City, for defendant.

BISCHOFF, J. There is no provision in the constitution under which the "branches," or local associations, of the parent union were organized whereby the funds collected from members of a branch by the officers of that branch were to become the property of the union. On the contrary, every expression of the instrument on the subject of the receipt and payment of moneys indicates that the funds were to remain the property of the local association from whose members they were collected. That a branch is to control its own finances is directly provided by section 3, article 1 of the constitution; death benefits to members' families are to be voted by a branch from "its funds" (article 2, sections 2, 3, 4, 5); and, so far as appears from the scheme of organization throughout, the branches are not made accountable to the parent union for sums received and disbursed, nor required to make any payment to it except in the case of a fine imposed upon a branch or assessment levied for the union's expenses (article 4).

[1] Looking to the constitution, therefore, as evidencing the contract under which the members parted with their money to create the fund in suit, the conclusion is irresistible that the association—the branch—took title to the fund, and that it was in no sense a collecting agent for the union, according to the understanding of the parties. The controversy with respect to the moneys which are deposited with the West Side Savings Bank to the credit of "Branch No. 2" has arisen through a vote of the majority of the members of that branch, present at a meeting, to secede from the parent union, and to form an independent union of their own, known as "Local 791." Other members of "Branch No. 2" assert that they are still the members of the association so styled, and through the plaintiff, as their president, they claim the fund, while the defendant Delaney, representing the reorganized association—the one-time members of "Branch No. 2"—claims that his associates succeeded to title of the moneys. So far as the plaintiff is concerned the claim of "Branch No. 2," pursuant to an order of interpleader, is asserted only through an assignment from the parent union upon the distinct theory, as averred, that the union, not the branch, owned the money. As I have noted, however, the plaintiff claimant could take no title through this assignment, since title was not in the union, and except upon the strength of the assignment no claim is made. Therefore an actual issue as to the fact that the plaintiff claimant represents the continued organization of "Branch No. 2" is not tendered as bearing upon that claimant's title, and, as the pleadings are framed, I cannot properly award the fund to the plaintiff upon the

theory negatived by his complaint that his association, as "Branch No. 2," was and remained the owner of the fund. The defendant's claim that the new organization, "Local 791," succeeded to the title to the moneys of "Branch No. 2," cannot be upheld upon the evidence before me.

[2] Doubtless all the members of the branch could, by their own act or agreement, apply this fund, which was their own, to any purpose deemed desirable; but a mere majority, at a stated meeting, could not make a transfer of that fund to another organization in the course of a disruption of the existing body. Their presence and voice had no such efficacy. The branch was organized and the fund collected under an express agreement between its members whereby the organization was to have a definite name and purpose inseparably connected with the longshoremen's union—the parent body—to which it was subservient. Within the express purposes of the organization, the members present at a meeting could bind the absentees to the result of a vote taken; but a resolution to end the association itself involved a modification of the very contract under which the meeting, as such, had any significance whatever, and a favorable vote upon that resolution had, of course, no bearing upon the property rights of the members who had not consented to the proposition. Whether mere notice of the purpose of such a meeting would suffice, if given to all members, is a question which does not arise here, since, according to the evidence, notice was not given to all, and title to the fund could not pass to the new organization which the majority of the individuals present at that meeting decided to create. The result is that, upon the record before me, neither of the parties claimant has established a right to the fund in suit.

I have indicated upon the proposed findings submitted my disposal of the requests to find. Form of decision and judgment may be presented accordingly, on notice of settlement, providing for costs to the defendant bank, the depository.