Complainants, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, C.I.O. (hereinafter referred to as International); Brewers Union Local No. 2 (hereinafter referred to as Local No. 2) and Fred Sickles filed a bill of complaint in the former Court of Chancery against Carl Becherer and eleven other members of Local No. 2 of whom some were officers and others were members of the executive board of the Local. The primary relief sought was an order to compel the defendants to turn over to Sickles as trustee of Local No. 2, the property and funds of the Local and to restrain the defendants from using the property or disposing of it. The other prayers are secondary and incidental to the primary relief. The bill of complaint alleged that the defendants had conspired among themselves and with members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of America, an American Federation of Labor Union (hereinafter referred to as Teamsters Union) to secede from the International, a C.I.O. organization and affiliate with A.F. of L. The answer denied the alleged conspiracy and by way of counterclaim prayed that the funds and property of Local No. 2 be decreed to be the property of the counterclaimants, free from any claim on the part of complainants.
On final hearing, the following facts were developed: The International was organized in 1887 and thereafter was affiliated with the A.F. of L. until 1941 when it was suspended from its affiliation with the A.F. of L. In July of 1946, it affiliated with the Congress of Industrial Organization, or C.I.O. At about that time there was considerable activity on the part of the Teamsters Union to win over the members of Local No. 2 from the C.I.O. to A.F. of L. The struggle of the Teamsters Union to take over Local No. 2 reached a point in February, 1947, which prompted the recording secretary of the International to come to Newark and attend a meeting of Local No. 2 at which meeting the recording secretary urged the members of the Local to remain loyal to the *Page 459 
International. The following month, the General Executive Board of the International passed a resolution that Local No. 2 be placed under the trusteeship of Sickles, a member of the General Executive Board of the International and that he be empowered to take charge of the affairs of the Local, to remove its officers and appoint temporary officers for the period of the trusteeship. There was no hearing before the Executive Board of the International prior to the passage of the resolution placing the Local under trusteeship. Upon his appointment as trustee, the complainant Sickles served notice upon the officers of the Local of his appointment and demanded possession of the property of the Local, which demand was refused. He also served notice upon the officers of the Local of their suspension from office. At some time in May, 1947, a meeting of Local No. 2 was held at which the members, by a practically unanimous vote, agreed to accept a charter from the A.F. of L. After obtaining an A.F. of L. charter, the members organized and elected officers as Local 24,251. All of the members of Local No. 2 with one exception, later joined Local 24,251 affiliated with A.F. of L.
The parent organization seeks the property and funds of Local No. 2 to the end that they may be held in trust until such time as the Local reorganizes. The defendants, on the other hand, assert that the property and funds of the Local constitute a trust fund, the beneficial interest in which is in the members of the Local, regardless of whether its affiliation is with the C.I.O. or the A.F. of L. A determination as to the rights in the property and funds of Local No. 2 after secession from the International and affiliation with a rival union, is largely dependent upon the nature of the relationship between the International and Local No. 2.
The relationship between a parent organization and a local union federated or affiliated with it is contractual and the terms of the contract are to be found in the constitution and by-laws of the parent organization. Harris v. Geier,112 N.J. Eq. 99 (Ch. 1932): "The constitution and by-laws of the International Brotherhood constitute a contract between the * * * local and the joint council and other agencies *Page 460 
of the Brotherhood." To the same effect Cameron v. InternationalAlliance, etc., 119 Id. 577 (E. A. 1936). The constitution of the parent organization in the instant case provides that "any local group * * * can affiliate * * * provided they * * * recognize the Constitution of the International Union and pay the regular dues and assessments * * * the per capita tax to be paid regularly every month to the International Union, shall be 50 cents per month for every member in good standing. If indications are that * * * the Local Union is about to secede * * * the General Executive Board may appoint a trustee to take charge and control of the affairs of the Local Union * * * the trustee shall take possession of all funds * * * and other property" which "shall be held in trust by the International Union until reorganization has been effected. It shall then be returned to the Local Union. * * * Reorganization shall be effected by and under the direction of the International Union * * * when the trustee recommends self-government * * * and such recommendation is approved by the General Executive Board."
The question for determination was stated in the opinion below thus: "Has a local union the right, by the will of its membership, to withdraw from its affiliation with an international labor organization, and if it has, what is the effect upon its funds and property?" The question is one of novel impression in this State with respect to labor unions but somewhat analogous situations have been considered in the case of benevolent associations. In Knights of Pythias v. GermaniaLodge, 56 N.J. Eq. 63 (Ch. 1897), there was involved the question of an improper diversion of the funds of the subordinate lodge. In holding that there was an improper diversion, Pitney, V.C., said: "It is familiar law that funds accumulated as were those here in question become, as soon as paid in, impressed with a trust with all its consequences. In this case the terms of the trust are found in the constitutions of the supreme, grand and subordinate lodges, and the laws of the former and by-laws of the latter. The funds being impressed with such a trust cannot lawfully be *Page 461 
diverted therefrom." In the cited case the court was dealing with the distribution of funds among certain members of a subordinate lodge which had dissolved. The grand lodge had enacted a constitution for subordinate lodges which Germania had accepted and which provided that upon dissolution its property should be returned to the grand lodge. The court held that the distributees had lost their right to the fund by abandoning the organization and that the distribution was not in accordance with the by-laws. Indeed it was not in accordance with the constitution as quoted above and furthermore was directly at variance with a further provision of the subordinate's by-laws which had been approved by the grand lodge and which read: "Any brother * * * shall, if he fall sick * * * and (be) disabled for work * * * receive the sum of five dollars, weekly sick benefit money."
Reverting to the constitution of the International we find that Article IV provides that: "Sec. 9. The dues charged by Local Unions shall not be less than $1.50 per month. The per capita tax to the International Union shall be paid out of this money.
"Sec. 10. The per capita tax to be paid regularly every month to the International Union, shall be 50 cents per month for every member in good standing and must be paid in advance. * * *
"Sec. 14. If it is proven that a Local Union fails to pay to the International Union the per capita tax, assessments or initiation fee provided for in Sections 8 and 10 of Article IV covering the full number of members in the Local Union, or if the stamps are not pasted in the membership books in the manner specified, said Local Union shall be subject to a fine of not less than $100.
"Sec. 15. Local Unions in arrears with their dues and assessments for three months shall have their charters withdrawn by the General Executive Board.
"Exceptions can be made when conditions warrant."
These are the only provisions establishing any right in the International to the use of the funds of the Local. It should be especially noted that the right of the International to the *Page 462 
property of the Local in the event of secession is to appoint a trustee and hold such property until reorganization has been effected and approved. Under no view of the situation can the International do more than hold the funds in trust. The pressing question is whether it may do the latter.
We think that this situation is controlled by the holding inState Council v. Enterprise Council, 75 N.J. Eq. 245 (E. A. 1909). Mr. Justice Swayze there pointed out that the relationship between the parent and the local council was purely contractual and that the terms of the contract were to be found in the respective constitutions and by-laws. He then said: "In determining these rights (property rights) it is of the first importance to consider the object with which the funds are raised and the method of disposition in contemplation of the individual members of the order. * * * No provision is made in the constitution and by-laws either of the national or state council for turning over any of this fund to either of those organizations. The right of the state and national councils to revenue is limited to what is called a tax, and is really a contribution of a small sum per capita for the necessary expenses of those councils collected of the individual members of the subordinate councils. * * * if that council (state) is to be deprived of those funds, it must be by reason of something in the contract which justifies the conclusion that the members who contributed the funds did so with the understanding that in certain contingencies the money should be turned over to purposes other than that for which it was raised, the relief of members of Enterprise Council." Mr. Justice Swayze commented upon NationalCouncil v. State Council, 64 N.J. Eq. 470 (Ch. 1903); affirmed on the opinion below, 66 Id. 429 (E. A. 1904), saying: "In that case he (Pitney, V.C.) held that the national council could not recover from the state council moneys which had been collected by the state council of the individual members, for the reason that, under the circumstances of that case, they had not been contributed by the individual members for the use of the national council."
In the instant case the dues paid by the members into *Page 463 
the treasury of Local No. 2 were not paid for the use of the International. This is clear from the fact that the International's constitution fixed the per capita tax and the manner and time of payment by Article IV, Sections 9, 10, 14 and 15 set forth above. The balance in the Local's treasury after discharge of its contractual obligation to pay the per capita tax belonged to the Local to be used for Local purposes in such manner as its members deemed advisable. Cf. Schubert Lodge v.Schubert Kranken, 56 N.J. Eq. 78 (Ch. 1897); TextileWorkers Union v. Federal Labor Union, 198 So. 606,131 A.L.R. 896 (Ala. Sup. 1940), and note at 131 Id. 902; 87Penna. Law Rev. 990; 97 Id. 288; 62 Harvard Law Rev. 507. When a majority seceded from the International and thereafter all the members of Local No. 2 with one exception joined the new Local 24,251 there was an undeniable ratification of the earlier secession and an implied expression of intent to retain the funds for the purposes of the newly created local.
We deem this decision dispositive of all the points argued for reversal.
The judgment is affirmed.