279 F.Supp. 747 (1967)
Alonzo SAWYERS, Bruce D. McArthy, Jariel I. Bay, Russell D. Bookout, James Adcox, Eugene Harl, and Aeronautical Mechanix Lodge No. 837, of the I.A.M. A.W., Aircraft Lodge of District No. 9, I.A.M.A.W., St. Louis, Missouri, Plaintiffs,
v.
GRAND LODGE, INTERNATIONAL ASSOCIATION OF MACHINISTS, an unincorporated international labor organization, c/o Richard L. Thurer, International Representative and Trustee for and in behalf of International Association of Machinists, over Aeronautical Mechanix Lodge No. 837, of the International Association of Machinists and Aerospace Workers, Aircraft Lodge of District No. 9, St. Louis, Missouri, c/o Local Lodge 837 Offices, International Trade Building, 400 Brooks Road, Hazelwood, Missouri, Defendant.
P. L. SIEMILLER, International President, and Eugene Glover, General Vice-President, individually and as officers of the Grand Lodge of the International Association of Machinists and Aerospace Workers, AFL-CIO, an unincorporated labor organization, and as Trustees of Local Lodge 837, I.A.M.A.W., and Eugene Glover as a member of Local Lodge 837, I.A.M.A.W., Plaintiffs,
v.
Bruce D. McARTHY, President, Jariel I. Bay, Vice-President, Russell D. Bookout, Recording Secretary, James Adcox, Conductor, Eugene Harl, Sentinel, and Alonzo Sawyers, Acting Financial Secretary-Treasurer, suspended officers of Local Lodge 837, I.A.M.A.W., Defendants.
Nos. 67 C 73(2), 67 C 125(2).
United States District Court E. D. Missouri, E. D.
November 29, 1967.
*748 *749 Jerome J. Duff, St. Louis, Mo., for plaintiffs.
Bartley, Siegel & Bartley, Clayton, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
This case has been submitted to the Court for decision on the basis of trial testimony, exhibits, and briefs of the parties.

History of the Case
On March 6, 1967, plaintiff Alonzo Sawyers, and purportedly on behalf of Local Lodge 837 of the International Association of Machinists and Aerospace Workers (hereinafter referred to as "Local 837" or "the local"), filed a complaint against Grand Lodge, International Association of Machinists and Aerospace Workers, AFL-CIO, (hereinafter referred to as "IAM"), in two counts. This case is designated as Case No. 67 C 73(2). In Count I, plaintiffs alleged that the IAM had imposed a trusteeship on Local 837 which was not in accordance with the relevant provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), and which was, therefore, in violation of 29 U.S.C. § 462 (Title III, section 302, LMRDA). In Count II, plaintiff Alonzo Sawyers, allegedly as representative of a class action under Rule 23 of the Federal Rules of Civil Procedure, alleged that his dues and those of the class whom he represented had been increased in violation of 29 U.S.C. § 411(a) (3) (Title I, section 101(a) (3), LMRDA). Jurisdiction of this case is based on 29 U.S.C. §§ 411 and 464, which provide that complaints regarding alleged violations of the LMRDA are properly brought in the federal district courts.
On April 19, 1967, P. L. Siemiller and Eugene Glover, in their capacities as officers of the IAM and trustees of Local 837, filed a complaint against Bruce D. McArthy, Jariel I. Bay, Russell D. Bookout, James Adcox, Eugene Harl, and Alonzo Sawyers, as suspended officers of Local 837, seeking to enjoin them from interfering with and preventing plaintiffs from carrying out the normal and lawful business activities of Local 837, and requiring defendants to return to Local 837 all property and assets wrongfully taken. This case is designated case No. 67 C 125(2). The Court took jurisdiction of this case under 29 U.S.C. §§ 411 and 464, and ordered it consolidated with the Sawyers case because both cases arose out of the same factual situation.
On April 28, 1967, the Court issued a preliminary injunction after hearing, and with consent of the parties, which, in addition to ordering consolidation of these two cases, ordered that the prosecution of Cause No. 282127 in the Circuit Court of St. Louis County, Missouri, be stayed pending final disposition of this suit; that mail addressed to Local Lodge 837 at its offices in Hazelwood, Missouri, be delivered to those offices and opened and kept by Eugene Glover or his designee without interference by any of the parties to this suit; that the meeting hall of Local 837 in Hazelwood, Missouri, be under the control of Eugene Glover or his designee, and available for the use of the local membership upon twenty-four hour written request providing no other meeting had been scheduled for the time requested, but that the membership of Local 837 not have access to the offices and records of the local, which would be under the control of Eugene Glover or his designee; that the checking account of Local 837 in the Lindbergh Bank might be drawn upon only by Eugene Glover or his designee, Richard L. Thurer, and account for all expenditures be made by them to the Court; that listed items, including the seal of Local Lodge 837, must be returned to the offices of the local.
*750 The IAM's motions to dismiss and to strike, and Sawyers' motion for summary judgment, were denied by order of this Court, dated June 2, 1967. On July 28, 1967, Sawyers amended Count I of his complaint by interlineation to include a statement wherein McArthy, Bay, Bookout, Sawyers, Harl and Adcox alleged that they were unlawfully expelled from the IAM and sought reinstatement. Thereafter, the consolidated cases proceeded to trial on September 20 through 22, 1967.
The pleadings in these cases raise three basic issues which must be resolved prior to the determination of whether or not the damages and restraining orders for which Sawyers, et. al., pray should issue: (1) Was the "trusteeship" imposed by the IAM upon Local 837 "validly imposed"? (2) Were McArthy, Bay, Bookout, Sawyers, Harl and Adcox "unlawfully expelled" from the IAM? (3) Was the per capita tax increase imposed by the IAM a "dues increase" within the meaning of 29 U. S.C. § 411(a) (3), and if so, was the increase validly imposed?

(1) Was the "trusteeship" imposed by the IAM upon Local 837 "validly imposed"?
The trusteeship to which Sawyers, et al., are objecting arose out of the events which occurred at Local 837's regular quarterly meeting of May 15, 1966. The transcript of this meeting, and the testimony at trial, indicates that it was extremely disorderly. Leonard Mullins, then the president of Local 837, and chairman of the meeting, repeatedly had to ask for order, and there was more than one point where the reporter ceased taking minutes because he said he could not follow the discussion due to the noise in the background. During the course of this meeting, five motions, which Chairman Mullins ruled out of order as contrary to the provisions of the IAM constitution and/or district or local lodge by-laws, were passed by the membership.
On May 20, 1966, Mullins and the other officers of the local, all of whom had been recently elected to their positions, wrote to IAM President Siemiller stating that they were new to their offices, that a number of substantial problems had come before them, and that a number of actions had been taken which were not in compliance with the Grand Lodge constitution, District No. 9's by-laws, or Local Lodge 837's by-laws. The officers stated that at the first meeting over which President Mullins presided, on May 15, 1966, the following actions were taken by the membership despite the fact that President Mullins declared the motions out-of-order because in violation of the IAM constitution, or local lodge or District No. 9 by-laws:
1. Plata Papps, general counsel of IAM, was ordered to leave the podium;
2. Clarence Bingaman, business agent of District 9, was ordered to leave the podium;
3. The membership voted to dispense with the reading of correspondence from the Grand Lodge;
4. During the course of the meeting, speakers were booed and prevented from being heard. Large numbers of persons became so disorderly that the meeting got out of hand, and the reporter at one point refused to go on taking minutes because of the uproar and chaos;
5. A motion was passed to give Jerome Duff, an attorney in private practice, membership in Lodge 837;
6. A motion was passed to organize a committee to implement the fifteen points outlined in Mr. Duff's "legal memorandum" with Mr. McArthy to be chairman with authority to name nine additional members to the committee and to incur whatever fees are necessary to carry out said fifteen points.
In addition, President Mullins and Bill Morton, a trustee of the local, stated that they had refused to sign a check to pay Jerome Duff legal fees without obtaining clarification from International President Siemiller as to whether any fee should be paid. In the light of these *751 facts, the officers requested Siemiller to place Local Lodge 837 under supervision and control.
The placing of a local under direction, control and supervision is authorized by Article VI, section 5, of the IAM constitution, which provides:
"The I.P. shall have the direction and supervision of all L.Ls., D.Ls., councils and conferences and officers thereof, with full authority to suspend L.Ls., D.Ls., councils, conferences, officers of such, business representatives and any individual acting in a representative capacity charged with incompetency, negligence, insubordination, failure of duty or violation of the provisions of this Constitution, pending a final disposition of such charges.
"* * *
"As the director and supervisor of all L.Ls., D.Ls., councils and conferences, the I.P., or his designated representative, may, when in his opinion a L.L., D.L., council or conference, is violating this Constitution or otherwise jeopardizing the welfare of the membership, upon securing the approval of the E.C., take over the direction, control and supervision of any L.L., D.L., council or conference, pending the filing of charges and the disposition thereof.
"With the approval of the E.C., the I.P. may revoke the charter of any L.L., D.L., council or conference found guilty after trial by the E.C. of a violation of this Constitution."[1]
On May 24, 1966, President Siemiller determined that the situation in Local 837 required the immediate imposition of supervision and control. On this date, the E.C. was not in session, and its approval could not be immediately secured. In 1956, however, the E.C. had passed a resolution authorizing a few of its number to act as "resident E.C." with power to act for the entire E.C. between sessions, and specifically, with power to approve the take over of direction, control and supervision. The resident E.C. gave its approval on May 24, 1966, and on that date Eugene Glover was appointed to take over direction and control, with Fred Carstens and Richard L. Thurer as his deputies. Letters informing the other E.C. members of the action were sent out, and by May 26, 1966, all the members of the E.C. had approved the action.
It is the contention of Sawyers, et al., that because the IAM constitution does not provide for a "resident E.C." it was without legitimate authority to give the approval which Article VI, section 5, requires the International President to obtain before imposing supervision. Therefore, Sawyers, et al., argue the imposition of direction, control and supervision was illegal and, thus, void ab initio. They further contend that suspension of Local 837 and its officers on March 1, 1967, was illegal because of the initial illegal "trusteeship".
Supervision lasted from May 24, 1966, to March 1, 1967. During that period, new local officers were elected (McArthy as president, etc.,), membership meetings were held regularly, committees continued to meet and function, and the affairs of the union were managed by the duly-elected officers. Glover, or one of his deputies, was required to authorize all expenditures of union funds, but none of these men ever refused to sign a check presented to him for his signature.
Testimony indicated that local affairs were supervised only in order to make certain that the actions of the officers and members of the local complied with the IAM constitution. A number of meetings were held to attempt to discover and resolve the problems of the local.
The Department of Labor takes the position that imposition of supervision constitutes imposition of a trusteeship within the meaning of section 3(h) of *752 the LMRDA, (29 U.S.C. § 402(h)) which defines a trusteeship as:
"any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."
Accordingly, the IAM, while maintaining that supervision does not constitute trusteeship, nevertheless agreed to furnish the Department of Labor with trusteeship reports for "informational" purposes, which they did during this period. On June 24, 1966, Sawyers filed a complaint with the Department of Labor in which he alleged that the imposition of the "trusteeship" on May 24, 1966, was in violation of Title III of the LMRDA. The Department of Labor made an investigation.
Prior to the membership meeting of February 28, 1967, it came to the attention of Mr. Glover that the Local's E.C. was planning to recommend certain motions which he considered illegal. Thurer advised the E.C. that these motions were in violation of the IAM constitution and that, if they were passed, he and Glover would have no choice but to recommend a trusteeship or suspension of Local 837. Specifically, Thurer advised the local's E.C. that it was illegal for the local to hire an attorney to represent an individual member in a suit having nothing to do with local business; that as Attorney Duff, whom they proposed to hire, had suits pending against the IAM, District 9, and other locals, there might be conflict of interest problems, and that it was improper to prefer charges against the IAM with the AFL-CIO without first exhausting internal IAM procedures. Despite this advice, the E.C. recommended these motions at the meeting of February 28, 1967, and the membership, despite receiving the same explanations at the meeting, passed these motions. After the meeting, Thurer preferred formal charges against the officers and members of Local 837, and on March 1, 1967, President Siemiller sent a telegram to the officers of Local 837 advising them that Local 837 and its officers were suspended and that Thurer was directed to take over the affairs of Local 837, including all money expenditures and disbursements. The resident E.C. approved Siemiller's action on March 1, 1967, and the entire E.C. had approved it by March 10, 1967.
The suspended officers were notified that a trial committee had been appointed (in accordance with the procedures outlined in Article L of the IAM constitution) and the trials were set for March 28, 1967.
On March 7, 1967, John C. Shinn, Acting Director of the Department of Labor, advised President Siemiller that the Department's investigation of a complaint filed with it regarding the IAM's actions of May 24, 1966, indicated that "there is not probable cause to believe that a violation of Title III of the LMRDA had occurred," and that no further action was contemplated by the Department.
On March 28, 1967, the trial committee conducted a trial respecting the charges filed by Thurer against Sawyers, Bay, Bookout, Harl and Adcox. Although all the suspended officers had been notified that the trial would be held at 7:30 p. m., on March 28, 1967, at the Sheraton-Jefferson Hotel in St. Louis, Missouri, none of them, with the exception of Jariel I. Bay, formally appeared. Section 9 of Article L of the IAM constitution provides that when a union member fails to appear for trial when notified to do so, the trial shall proceed as though the member were, in fact, present, and it did so proceed. Sawyers and the others did not appear at the trial because McArthy had called a meeting of Local 837 for 7:00 p. m., on March 28, 1967. McArthy testified that at this meeting he urged the membership of Local 837 to break with the IAM and form an independent union.
The trial committee found, inter alia, that a lawsuit then pending in the state courts and seeking damages against Duff and McArthy was a private lawsuit against individuals, for which it would *753 be improper to expend union funds, and advised that the suspension be continued.
After the suspension of Local 837 and its officers, Sawyers, et al., staged a sit-in at the local's offices, in defiance of a St. Louis County Circuit Court restraining order; sought to prevent the use of Local 837's checking account; and attempted to withdraw the balance in the local's checking account and place it in a "trust fund". On March 22, 1967, McArthy, representing himself as president of Local 837, and Russell Bookout, representing himself as recording secretary, wrote a letter to the president of the Lindbergh Bank, in which the local's funds were kept, instructing that the bank not honor checks signed by Richard L. Thurer, but only checks signed by McArthy, Bay, and Financial Secretary-Treasurer Noel Clark. Thereafter, the bank refused to permit any withdrawals from Local 837's account until the party entitled to make withdrawals was clarified.
On March 27, 1967, McArthy, again representing himself as president of Local 837, and using the local's seal, wrote a letter to the postmaster in Hazelwood (where the local's offices are located) instructing that no mail was to be delivered to the union hall, but instead it was to be picked up personally by Russell Bookout. Thereafter, Local 837 was unable to obtain mail addressed to it.
Both the letter to the bank and the letter to the postmaster bore the imprinted seal of the local, which Sawyers, et al., had in their possession, and as a result of these letters, Glover and his deputies were unable to conduct the normal business activities of the local, thereby jeopardizing the employment status of many of the members and preventing the local from receiving communications from the IAM. This situation was remedied on April 28, 1967, when this Court issued a restraining order heretofore set out.
Title III, LMRDA, (29 U.S.C. Sec. 462), provides:
"Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."
Since the enactment of this section, a national union organization has been held to have no "inherent" power to impose trusteeships over district or local lodges, or their officers, in the absence of its constitution or by-laws providing therefor, Flight Engineers International Association, AFL-CIO, CAL Chapter v. Continental Air Lines, Inc., 297 F.2d 397 (9th Cir. 1961), cert. den. 369 U.S. 871, 82 S.Ct. 1141, 8 L.Ed.2d 276 (1962), and general statements that the parent organization shall have power to take "such action as is necessary and proper for its welfare" have been held too vague and indefinite to meet the requirements of this section. United Brotherhood of Carpenters & Joiners of America v. Brown, 343 F.2d 872 at 882 (10th Cir. 1965).
The IAM's constitution does not use the word "trusteeship", but the circumstances under which both "supervision" and "suspension" may be imposed are sufficiently specific to meet the requirements of Title III, LMRDA. Therefore, this Court need not determine whether a trusteeship was imposed on May 24, 1966, with "supervision", or on March 1, 1967, with "suspension", so long as the factual circumstances justified the imposition of each, and the imposition was accomplished according to the procedures outlined in the IAM constitution.
There is no doubt that the meeting of Local 837 on May 15, 1966, was chaotic and that several of the motions passed there were illegal. For example, Article I, section 1, of the IAM constitution, *754 provides that "any machinist, die sinker, die or tool maker, aerospace worker, electronic worker, automobile, heavy duty or aircraft machinist or mechanic, welder, specialist, machinist's helper, production worker, helper-apprentice, or apprentice working in the machine or metal industry may be admitted to membership upon paying the required fee and assuming the obligation of the IAM * * *." Clearly, an attorney in private practice is not eligible for membership in the IAM, and a motion to give him such membership was properly ruled out of order.
The Court finds that the circumstances existing on May 24, 1966, justified the imposition of supervision to "restore democratic procedures, or otherwise carry out the legitimate objects of such labor organization."
The Court also finds that the procedures by which supervision was imposed were proper. The contention of Sawyers, et al., that approval of the resident E.C. was insufficient to satisfy the requirement that the I.P. secure "approval of the E.C." is not persuasive. By May 26, 1966, all members of the E.C. had ratified the I.P.'s action of May 24, 1966, and the ratification related back to May 24, 1966, thereby supplying the original authority necessary for doing the act. See 3 Am.Jr.2d, Agency, Ratification, section 160 at 549.
Therefore, the Court finds that the IAM's imposition of direction, control and supervision over Local 837 on May 24, 1966, was proper.
Sawyers, et al., contend that the suspension of Local 837 on March 1, 1967, was illegal because the original "trusteeship" of May 24, 1966, was illegal, thereby forcing Local 837 to take the actions for which it was suspended. The Court finds, however, that the passage of illegal motions at the membership meeting of Local 837 on February 28, 1967, threatened the organizational unity of the IAM and the improper expenditure of local funds. These circumstances justified the suspension of Local 837 on March 1, 1967, which was accomplished according to the procedures outlined in Article L of the IAM constitution. Therefore, the Court finds that the suspension of Local 837 on March 1, 1967, was proper.
In the light of these findings, the trusteeship presently being enforced over Local 837 is legal and will not be set aside. In order to insure that this trusteeship will not be unlawfully interfered with in the future, paragraphs 3, 4, 5 and 6 of the temporary restraining order issued by this Court on April 28, 1967, will be made permanent, except that the trustee or his designee will not be required to submit expenditure reports to this Court.
The IAM submits that Local 837 never authorized the bringing or maintaining of this suit, and that it should be stricken as a party-plaintiff in this case. In Count I, paragraph 2, of the Amended Complaint, Sawyers, et al., allege that "The membership of L.L. 837 has by motion joined as a co-Plaintiff in this Complaint." It appears that at the membership meeting of February 28, 1967, a motion for joining in Sawyers' complaint to the Department of Labor was approved, but Sawyers did not file his complaint in this Court until April 19, 1967, and there is no evidence supporting plaintiffs' contention that the membership of Local 837 joined in this complaint, which is a separate and different action from the complaint filed with, and found groundless by the Department of Labor. Therefore, Local 837 will be stricken from Count I as a party-plaintiff.

(2) Were McArthy, Bay, Bookout, Sawyers, Harl and Adcox "unlawfully expelled" from the IAM?
Charles F. Williams and fifteen other members of the IAM filed charges of defamation and misconduct in office against McArthy on May 23, 1966, and subsequently filed a bill of particulars on July 7, 1966. Formal hearings were held before a trial committee appointed by the I.P., on July 21, 22, 23, 29, 30, and August 26, 1966, the transcripts of *755 which were received by the trial committee in December 1966. The committee submitted its report and recommendation that McArthy be expelled to President Siemiller on March 1, 1967. In his letter of May 1, 1967, Siemiller dismissed the charges of defamation, but found McArthy guilty as charged of acts of dual unionism, and imposed the penalty of expulsion. McArthy was advised of his right to appeal this decision within thirty days, pursuant to the provisions of Article L, section 15, of the IAM constitution, but he did not appeal from the I.P.s' decision.
On April 20, 1967, charges were preferred against Sawyers, Bay, Harl, Bookout, and Adcox for attempting to remove union funds without authority to do so, for fraudulently holding themselves out as officers of the local, for attempting to set up a trust fund in violation of the IAM constitution, for illegally using the seal of the local, and supporting and encouraging dual unionism by actively participating in the membership meeting held on March 28, 1967, at which a motion was passed to set up an independent union to be known as T.E.A.M.
Hearings regarding these charges were held on June 5 and 6, 1967, and the trial committee's report indicates that the parties to the proceeding were represented by counsel, changed attorneys during trial, and were given opportunity to present evidence, arguments, and to cross-examine witnesses. The trial committee found Sawyers, et al., guilty as charged and recommended expulsion. In his letter of decision, dated July 12, 1967, Siemiller found that Sawyers, et al., were afforded a full opportunity to present evidence and cross-examine witnesses, and to make final argument and summation. He found further that Sawyers, et al., were guilty of attempting to seize union funds without authority, of attempting to establish a purported "trust fund", attempting to disaffiliate with the IAM, attempting to affiliate with T.E. A.M., and attempting to transfer the assets of the trust fund into the treasury of T.E.A.M. Siemiller stated that the last charge of supporting dual unionism was in itself sufficient cause for expulsion, found all parties-defendant (Sawyers, et al.) guilty as charged, and imposed the penalty of expulsion.
Article L of the IAM constitution provides for appellate review of such a decision within thirty days, which period would have ended on August 11, 1967. A document in the nature of a request for review and dated August 11, 1967, was apparently forwarded by Sawyers, et al., to President Siemiller, but was not received by him until August 14, 1967, at which time it was rejected as untimely.
There is no question that McArthy failed to exhaust internal remedies, and a serious question as to whether Sawyers, et al., exhausted internal remedies. Nevertheless, the Court has examined the two grounds on which McArthy and Sawyers, et al., base their prayer for reinstatement and has found both of them to be without merit. McArthy, Sawyers, et al., make no contention that they did not commit the acts which it was alleged they had committed and for which they were expelled, nor do they make any contention that the trial proceeding was unfair in any manner except (1) the denial of counsel of their own choice, and (2) the activities in question were protected activities.
The first ground presented is that the acts of which McArthy and Sawyers, et al., were found guilty are protected under Title I, LMRDA, and Section 7, NLRA. The second ground is that these men were denied counsel of their choice and that the denial of counsel of one's choice in an internal disciplinary proceeding is a violation of rights guaranteed to union members under Title I, LMRDA.
In separate proceedings, McArthy and Sawyers, et al., were found guilty of advocating "dual unionism". Title I, LMRDA, and Section 7, NLRA, protect freedom of speech, but the right of freedom of speech is limited by two exceptions. These reserve to the unions the "power to enforce reasonable rules (1) as to the responsibility of members *756 toward the organization as an institution and (2) to prevent interference with the union's contractual and legal obligations." Nix v. Fulton Lodge No. 2, IAMAW, 262 F.Supp. 1000 (N.D.Ga. 1967). When local officers encourage local members to break away from the national organization and form an independent union, it clearly undermines the responsibility of local members to the national organization, and threatens the enforcement of contractual obligations. Therefore, the advocation of dual unionism is not protected either under Title I, LMRDA, or Section 7, NLRA.
McArthy was not represented by counsel at the hearings in July and August, 1966, and while the trial committee's report of the hearings on June 5 and 6, 1967, indicates that Sawyers, et al., were represented by "counsel", there is no evidence in the record as to whether "counsel" was or was not an attorney at law.
Title I of the LMRDA requires that a union member be informed of the charges against him and that he be given a "full and fair hearing", but there is nothing in the LMRDA indicating that the denial of counsel of one's choice as representative in an internal disciplinary proceeding is a violation of rights guaranteed by Title I, LMRDA, and Sawyers, et al., have cited no cases in support of this proposition.
In the case of Cornelio v. Metropolitan District Council of Philadelphia et al., 243 F.Supp. 126 (E.D.Pa.1965), 358 F.2d 728 (3rd Cir. 1966), cert. den. 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1967), a similar argument was made. In that case, plaintiff contended that a provision of the Carpenters' Constitution which is practically identical to Article L, section 10, of the IAM's constitution, prevented him from having a "full and fair hearing" as required by the LMRDA because it denied him the right to be represented by "outside counsel". In discussing this argument, the District Court stated:
"`The answer to the contention lies in the statement of the fundamental principle that the right to be represented by counsel, * * * does not apply to hearings before labor unions. * * * All that a union member is entitled to * * * is a fair hearing. This means only that before any action is taken against him he must be informed of the charges and be given an opportunity to hear them and refute them.' (Citations omitted.)"
In the instant case, McArthy and Sawyers, et al., received notice of the charges against them and were given ample opportunity to hear and refute these charges. The evidence adduced at trial indicates that they were given a full and fair hearing. In the light of Cornelio and other cases, it is clear that Title I of the LMRDA does not give a union member the right to be represented by counsel of his choice in an internal disciplinary proceeding. See: Local 1140, United Electrical Radio and Machine Workers of America v. United Electrical Radio and Machine Workers of America, 232 Minn. 217, 45 N.W.2d 408, 23 A.L.R.2d 1197; International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO, v. Becherer, 142 N.J.Eq. 561, 61 A.2d 16, aff'd 4 N.J.Super. 456, 67 A.2d 900, cert. den. 3 N.J. 374, 70 A.2d 537; Duris v. Iozzi, 6 N.J.Super. 530, 70 A.2d 793.
The Court finds that procedures resulting in the expulsion of McArthy, Sawyers, Bay, Bookout, Harl and Adcox were proper and protected the rights guaranteed to these persons by Title I, LMRDA, and/or Section 7, NLRA, and, therefore, their prayer for reinstatement will be denied.

(3) Was the per capita tax increase imposed by the IAM a "dues increase" within the meaning of 29 U.S.C. § 411 (a) (3), and if so, was the increase validly imposed?
In Count II of this Amended Complaint, Sawyers alleges that the IAM, by compelling him and all IAM members to pay an additional fifty cents per month per capita tax as of April 1, 1966, violated *757 section 101(a) (3), LMRDA, (29 U.S.C. section 411(a) (3)), which provides:
"Dues, initiation fees, and assessments.  Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except 
(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or
(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."
Sawyers and the class he allegedly represents seek recovery from the IAM of the monies collected as a result of this increase.
It is well established that a person who has been expelled from a union has no standing to represent a class of persons who are union members. Carroll v. Associated Musicians of Greater New York, 316 F.2d 574 (2d Cir. 1963). While Sawyers had not been expelled at the time he filed this suit, he had committed many or all of the acts which led to his expulsion, and in view of these activities, he is not qualified to maintain a class action on behalf of other IAM members, but only on behalf of other persons similarly situated. See Rule 23, F.R.Civ.P. Therefore, the class which Sawyers represents in Count II consists of, and is limited to Sawyers himself, McArthy, Bay, Bookout, Harl, and Adcox, all as individuals.
In the IAM, the per capita tax is a sum collected monthly by the general secretary-treasurer from each local lodge. Article I, section 9, of the IAM constitution, provides that the minimum dues to be paid by each member to his local is $4.00 per month, and the amendment of Article VII, section 4, governing per capita tax rates, required no change in the article governing minimum dues paid by members to the local. The increased per capita tax could be, and in many locals was, paid without an increase in the dues paid by the membership to the local. In the case of Local 837, however, Article X, section 1, of the by-laws, which was in effect from 1958 to the time of the increase, provides for an automatic dues increase in an amount equal to any per capita tax increase. Thus, when the per capita tax increase became effective April 1, 1966, the dues of the members of Local 837 were also increased from $4.00 to $4.50.
It is clear that there is a distinction between "per capita taxes" and "dues", but whether the former fall within the ambit of section 101(a) (3), governing increases in "the rates of dues *758 * * * payable by members" is a question which must be answered in the light of the factual situation in each case.
In the only case in which local dues and per capita taxes (and all other assessments) were paid by union members directly to the international, which then remitted a portion of these funds to the locals, the Court found that "the so-called per capita tax is an exaction which is actually paid by the members" and concluded that in these circumstances, a per capita tax increase constitutes a "dues increase" within the meaning of section 101(a) (3), LMRDA. Local No. 2, International Brotherhood of Telephone Workers v. International Brotherhood of Telephone Workers, 362 F.2d 891 (1st Cir. 1966).
In cases where per capita taxes were collected from the locals, rather than directly from the individual members, attacks on per capita tax increases on the grounds that they violate section 101(a) (3) have not been successful. Ranes v. Office Employees International Union, Local No. 28, 317 F.2d 915 (7th Cir. 1963); Brown, supra; King v. Randazzo, 234 F.Supp. 388 (E.D.N.Y.1964).
In Ranes, the international, at a regular convention, raised the minimum dues which members were required to pay their locals from $2.00 per month to $3.00 per month. Locals in which dues had previously been set at the $2.00 minimum were required to increase their dues to $3.00, and a member of one such local complained that as the increase was not submitted to a referendum of the members of the local, it violated the provisions of section 101(a) (3) and was, therefore, illegally imposed.
The Court found that:
"The only issue presented is whether the action of an international union pursuant to Section 101(a) (3) (B) of the Act increasing the constitutional minimum for dues payable by its members to their respective local unions can be enforced by an affiliated local union without first submitting the question of a dues increase to a vote of its members under the provisions of Section 101(a) (3) (A) of the Act."
and concluded that:
"When Congress provided methods for increasing `rates of dues' in subsection (B) we think it intended what the plain language of the statute says. We, accordingly, reject plaintiffs' argument that that subsection should be interpreted to apply to per capita taxes. We should be reluctant to attribute to Congress either a lack of knowledge of the distinction between `dues' and `per capita taxes' in labor-union parlance or the lack of the ability to articulate its intent.
"The protection of the rights of union members is the purpose of 101 (a) (3). Unless the provisions of subsection (B) are meaningless, Congress has said that that purpose is served when union members have representation at the council table where dues structures are changed."
In Brown, supra, plaintiffs sought to recover certain payments made by the local to the district council, which plaintiffs alleged were invalid because they were not authorized by a referendum vote of the local membership. The Court reasoned that as a member of the international, each local is bound by the constitution of the international, and further, that if this constitution gives the general president of the international the right to form district councils and require locals to affiliate with them, such locals must so affiliate, and become bound by the district council's by-laws. In this case the district council's by-laws required payment of a per capita tax by the local to the district council, and the Court declared such a provision proper and enforceable, although no vote of any kind had been held regarding the payments which the international was requiring the newly-affiliated local to make to the district council.
In the King case, plaintiffs were members of a local lodge and were required to pay a "per capita tax" directly to the *759 Sugar Council, an intermediate body in the union similar to a district council. The Court stated:
"A true `per capita tax' is one which is levied by a parent labor organization upon a local union with which it is affiliated. It is not a tax levied by a parent or a coordinating union directly upon the members of its affiliated locals. It is paid to the parent body or authorized coordinating union from the dues collected by the local from its members and generally related to the numerical strength of the local. But it is not an additional sum charged directly to the member and it is not used as a subterfuge to increase dues. (Citations omitted.) The term `per capita tax' as used in this case is not used in its traditional sense. Instead it is employed to denote the payment of dues by members of a local directly to an intermediate coordinating council within the ILA structure. The assessment does not fall within the definition of a true `per capita tax'. As indicated in the prior opinion, the term is simply another label for dues which falls within the proscription of Section 101 (a) (3)."
The Court, however, went on to decide that the Sugar Council was a labor organization within the meaning of section 101(a) (3) (B) (i), LMRDA, and concluded:
"Such a labor organization, according to the statute, has a right to increase dues by a majority vote of the delegates voting at a regular convention. The Sugar Council having followed this procedure, the increase in dues has been in accordance with the statutory requirements and, therefore, this Court must remove its injunctive prohibition."
The factual situation in the instant case is similar to the situations in Ranes and King and not to the situation in the Telephone Workers case. Therefore, the Court finds that the per capita tax increase was not a dues increase within the meaning of section 101 (a) (3), LMRDA. The Court further finds that as the increase was passed by a majority vote of the delegates to the IAM's 1964 convention and ratified by a secret ballot referendum vote of all IAM members in accordance with the provisions of the IAM constitution, the per capita tax increase effective April 1, 1966, was validly imposed upon Local 837.
The increase in Local 837's dues was the result of the operation of Article X, section 1, of Local 837's by-laws, which provides:
"In case the Grand Lodge or District No. 9 of the International Association of Machinists and Aerospace Workers change their working rules, per capita tax, or change their By-Laws by referendum vote, Aeronautical Mechanix Lodge No. 837's working rules, dues, and By-Laws will be automatically changed accordingly."
Article X, section 1, was passed in 1958 by an affirmative vote of a majority of Local 837's members upon prior notice and by secret ballot, and was re-enacted without change in 1966. The procedure for amending the local's by-laws complies with the requirements of section 101(a) (3), LMRDA, and the procedure was followed when the by-laws were amended in 1958. Thus, the dues increase resulting from the implementation of this by-law was imposed in accordance with the governing provisions of the LMRDA. Therefore, the increase in the dues of Local 837 members, which became effective on April 1, 1966, was validly imposed and the prayer of Sawyers, et al., for the recovery of monies collected by the local and remitted to the IAM as a result of the increased per capita tax effective April 1, 1966, will be denied.
NOTES
[1] Note: I.P. means International President; L.L. means Local Lodge; D.L. means District Lodge, and E.C. means Executive Council.